2014 VT 13



In re Bjerke
Zoning Permit Denial (2013-108)

 

2014 VT 13

 

[Filed 24-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2014 VT 13
 
  


 No. 2013-108
 
  


 In re Bjerke
 Zoning Permit Denial
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, 
 Environmental Division
 
 
  
 
 
  
 
 
  
 
 
 December Term, 2013
 
 
  
 
 
  
 
 
 Thomas
 G. Walsh, J.
 
 
  
 
 Alan Bjerke, Burlington,
Appellant.

 

Kimberlee J. Sturtevant, Assistant
City Attorney, Burlington, for Appellee.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund,
Robinson and Crawford, JJ.

 

 

¶ 1.            
CRAWFORD, J.   Applicant appeals the Environmental
Division’s affirmance of the Burlington Development
Review Board’s decision to deny his application for a zoning permit to alter
the exterior of his house.  Applicant argues that his zoning permit
application was “deemed approved” because the municipal zoning administrator
did not act upon it within thirty days.  He further claims that the
Environmental Division erred by admitting the municipal zoning ordinance into
evidence after trial and putting the burden of proof of compliance with that
ordinance on applicant.  Finally, applicant challenges the Environmental
Division’s interpretation of the zoning ordinance.  We affirm.

¶ 2.            
In July 2010, applicant applied for a zoning permit to modify a duplex
house that he owns in the City of Burlington.  The building is more than
fifty years old and remains largely intact in its original form, although an
addition and a deck have been added to the rear of the structure.
 Applicant proposed to raise a portion of the original roofline to match
the roofline of the addition.  Applicant also proposed to replace the
hipped roof porticos at secondary entrances on the south side of the building
with gable roof canopies, and to replace some of the original small,
irregularly spaced windows with larger, more evenly spaced windows. 

¶ 3.            
Applicant submitted his proposal to the City’s Department of Planning
and Zoning on July 7, 2010.  City planner Mary O’Neil contacted
applicant via email on July 12.  She informed applicant that the building
was listed on the Vermont State Register of Historic Places, and therefore his
proposed changes would not comply with standards 2, 5, and 9 of § 5.4.8(b)
of the City of Burlington Comprehensive Development Ordinance.  She
stated that “[a]s proposed, staff cannot support the
proposed development. I can place this one on a Design Advisory Board agenda
for their review, but expect that they will review the ordinance standards and
find your application in conflict with the above sections.”  On July 13,
applicant responded that he had “decided to plow forward with this application
as presented,” and asked when the next Design Advisory Board meeting would be. 

¶ 4.            
The Design Advisory Board (DAB) is an independent board created by
Comprehensive Development Ordinance § 2.5.1.  Upon request of the
Development Review Board or a zoning administrator, the DAB will review zoning
permit applications and provide written advice and recommendations to the
Development Review Board.  

¶ 5.            
On July 21, the zoning administrator put applicant’s project on the DAB
agenda for its August 10, 2010 meeting.  At that meeting, which applicant
attended, the DAB reviewed applicant’s permit application and ultimately voted
to table the application.  The notes from the meeting indicate that the
proposed changes to the porticos and windows were acceptable to the DAB, but
that the DAB asked applicant to submit a revised drawing for the roofline that
would leave the original structure clearly differentiated from the proposed
addition. 

¶ 6.            
Applicant brought a revised drawing to City planner O’Neil on October 1
and showed it to her.  Planner O’Neil informed applicant that she did not
think that the revised drawing reflected the changes that the DAB had
requested, but he could submit it and she would take it to the DAB for
review.  Applicant did not submit the drawing, nor did he indicate whether
he preferred to proceed with the original application or that he would submit
another revised plan.  On December 3, applicant met with City zoning
administrator Kenneth Lerner and requested that the permit be “deemed approved”
under 24 V.S.A. § 4448(d).  Mr. Lerner wrote to applicant on December 15
stating that the City had suspended permit review as of August 10 in order to
allow applicant to submit revised plans to address the concerns of the DAB, and
that the permit was not deemed approved.  

¶ 7.            
Applicant appealed from the zoning administrator’s determination to the
Development Review Board.  After conducting a hearing, the Board issued a
decision on February 15, 2011.  The Board concluded that the permit was
referred to an appropriate municipal panel, the DAB, within thirty days of the
date that the application was deemed complete (July 21), and therefore the
deemed approval remedy was unavailable to applicant.  Applicant did not
appeal this decision.  

¶ 8.            
After the Board’s decision issued, applicant met with the City twice to
attempt to resolve the design issue.  On March 3, 2011, applicant informed
the City that he did not intend to amend his original plan.  The zoning
administrator denied the permit application on March 4, 2011. 

¶ 9.            
Applicant appealed to the Development Review Board, which affirmed the
zoning administrator’s denial of the permit.  Applicant then appealed to
the Environmental Division.  The court denied applicant’s motion for
summary judgment on the issue of deemed approval, finding that the City had
both issued a decision and referred the application to an appropriate municipal
panel within thirty days of applicant’s application.  After a site visit
and merits hearing, the court issued a decision on February 14, 2013 in which
it concluded that applicant’s permit application failed to comply with the
historic preservation standards in § 5.4.8 of the City’s zoning
ordinance.  That decision is the subject of the current appeal to this
Court. 

¶ 10.         We
first address applicant’s argument that the Environmental Division erred in
awarding summary judgment to the City on applicant’s claim that his permit
application was deemed approved.  Our review of the Environmental
Division’s decision on a motion for summary judgment is de novo.  In re Beliveau NOV, 2013 VT 41, ¶ 7, __Vt.__, 72 A.3d 918. 
“Summary judgment is appropriate when, taking all allegations made by the
nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.”  Ayer
v. Hemingway, 2013 VT 37, ¶ 13, __Vt.__, 73 A.3d 673 (quotation
omitted); V.R.C.P. 56(a). 

¶ 11.         The
deemed-approval rule is a statutory remedy that protects property owners from
undue administrative delay.  Section 4448(d) of Title 24 provides that “[i]f the [zoning administrator] fails to act with regard to
a complete application for a permit within 30 days, whether by issuing a
decision or by making a referral to the appropriate municipal panel, a permit
shall be deemed issued on the 31st day.”  Similarly, § 3.2.5 of the
City’s zoning ordinance provides:

The administrative officer shall take
action with regard to a complete application within 30 days. Such action shall
be to issue a decision on the application pursuant to the authority granted in
Sec. 3.2.7 of this Article, or by making a referral to the [Development Review
Board].  Should the administrative officer fail to take any such action, a
permit shall be deemed issued on the 31st day pursuant to 24 V.S.A.
§ 4448(d).  Modifications to a pending application by an applicant
shall restart any applicable time limits, commencing upon the modification
date. 

The purpose of the deemed-approval
remedy is “ ‘to curtail indecision and protracted
deliberations in the zoning decision-making process and to constitute a final
decision to provide a mechanism for any interested party to appeal the
decision.’ ”  In re Trahan NOV,
2008 VT 90, ¶ 12, 184 Vt. 262, 958 A.2d 665 (quoting Wesco,
Inc. v. City of Montpelier, 169 Vt. 520, 526-27, 739 A.2d 1241, 1246 (1999)
(interpreting predecessor statute to § 4448)).  “Given the possible
consequences of granting permits inconsistent with the zoning requirements, we
must be careful to use [the deemed-approval remedy] only where its application
is clearly consistent with statutory intent.”  Id. (quotation
omitted). 

¶ 12.         Applicant’s
claim in this case is similar to that advanced by the appellants in Trahan. 
In Trahan, landowners requested a permit for a pond that they had already
built.  Approximately two weeks later, the zoning administrator sent the
landowners an opinion memorandum stating that the pond was in violation of the
town’s setback regulations.  When the landowners failed to respond, the
zoning administrator issued a notice of violation.  The landowners
appealed the notice of violation to the zoning board, which issued a decision
affirming the notice of violation two months later.  The zoning
administrator then denied the permit.  The landowners claimed on appeal
that their permit request had been deemed approved when the zoning
administrator failed to “act” upon their request within thirty days, and that
the zoning administrator could not deny a permit that had been approved by
operation of law.  

¶ 13.         We
held that, to the contrary, the zoning administrator had promptly investigated
the application and notified the landowners in a timely manner that the pond
violated the town’s regulations.  We noted that the determination that the
pond was in violation of the setback regulations necessarily meant that the
administrator could not issue a permit without a variance.  Trahan, 2008 VT 90, ¶ 14.  The notice of
violation was also a de facto notice that the permit was denied unless the
zoning board ruled differently on appeal.  Id.  Accordingly,
we held that the zoning administrator “ruled in a timely manner on the exact
question that determined landowners’ right to a permit, however she labeled
that ruling.”  Id. 

¶ 14.         Similarly,
in this case a City planner notified applicant within five days of receiving
his application that a permit could not issue because the proposed
modifications would violate the historic preservation regulations of the City’s
zoning ordinance.[1] 
She offered him the options of submitting a revised application or meeting with
the DAB.  As in Trahan, this record does not reflect “indecision or
protracted deliberation on the part of zoning authorities.”  Id. ¶ 13.  Applicant was informed very
quickly that his permit request, as submitted, violated the City’s zoning
ordinance and would be denied unless modified.  We conclude that the
zoning administrator therefore complied with § 4448(d) and the City’s zoning
ordinance by issuing a decision on the permit application within thirty days.
 Because the administrator complied with these provisions, the permit did
not issue by operation of law.  The Environmental Division properly
awarded summary judgment to the City on this issue. [2]

¶ 15.         Applicant’s
second argument is that the Environmental Division improperly admitted the
City’s zoning ordinance into evidence after trial.  During the July 26,
2012 merits hearing, the court admitted a certified copy of the ordinance into
evidence. Applicant objected to its admission.  After the close of
evidence but prior to the court’s entry of judgment, the City filed a letter
with the court indicating that a portion of the ordinance had been omitted by
accident from the copy admitted into evidence at trial.  The court struck
the copy that had been admitted from evidence because the copy was not a true,
accurate, and complete copy, as required by V.R.E. 902.  However, because
applicant had cited the ordinance in his statement of questions, the court held
a hearing on whether it should reopen the evidence.  The court concluded
that it should, and immediately conducted a partial new trial under V.R.C.P.
59(a) and (d) on the limited issue of whether the ordinance could be admitted
into evidence.  The City produced a second certified copy that had no
missing pages, and the court admitted it into evidence.  

¶ 16.         The
trial court has broad discretion to permit further evidence to be offered after
the close of evidence in a trial but prior to entry of final judgment. 
See Cliche v. Fair, 145 Vt. 258, 261,
487 A.2d 145, 148 (1984) (noting that trial court has control over order and
presentation of evidence); see also Greg A. Becker Enters., Ltd. v. Summit
Inv. Mgmt. Acquisitions I, LLC, 725 S.E.2d 841, 843 (Ga. Ct. App. 2012)
(holding that trial court has discretion to decide whether to reopen evidence
after hearing); Singh v. City of Hartford, 974 A.2d 810, 813 (Conn. App.
Ct. 2009) (stating that trial court has discretion to reopen evidence after
close of testimony and prior to final judgment where it will not substantially
prejudice any party); Pinnacle Gas Res., Inc. v. Diamond Cross Props., LLC,
2009 MT 12, ¶ 17, 201 P.3d 160 (“[T]he reopening of a case for the
introduction of further evidence after it has been closed is within the
discretion of the trial court.”).  The Environmental Division in this case
did not err by reopening the evidence for the limited purpose of introducing a
complete copy of the zoning ordinance.  As the court noted, applicant’s
appeal centered upon the interpretation of a provision of the ordinance that
was missing from the original version submitted by the City.  Without the
relevant language of the ordinance before it, the court could not properly address
applicant’s claims.  

¶ 17.         Applicant
further argues that the Environmental Division improperly took judicial notice
of the ordinance by stating that it knew there was a zoning ordinance in
Burlington.  This argument has no merit.  The existence of the
ordinance was not at issue, and a copy of the zoning ordinance had already been
admitted—though it was subsequently stricken because relevant pages were
missing—so it was not improper for the court to state that the City had an
ordinance.  While it is true that a court may not take judicial notice of
the contents or validity of an ordinance, that did not occur here.  See Hambley v. Town of St. Johnsbury, 130 Vt.
204, 208, 290 A.2d 18, 20 (1972) (explaining well-established principle that
courts cannot take judicial notice of local ordinances). 

¶ 18.         Third,
applicant claims that the Environmental Division erred by placing the burden of
proof of the existence of the ordinance and applicant’s compliance with that
ordinance on applicant rather than the City.  This contention also is
without merit.  It is true that the City had the burden of proving that it
had enacted a zoning ordinance.  It met this burden through the
introduction of a version of the ordinance at trial.  With the court’s
permission, it later provided a corrected copy.  As the party seeking to
reverse the City’s denial of his permit application, applicant had the burden
of proving that his application actually complied with the ordinance.  See
L.M. Pike & Son, Inc. v. Town of Waterford, 130 Vt. 432, 437, 296
A.2d 262, 266 (1972) (applicant for zoning variance had burden of proving that
it met requirements of ordinance).  

¶ 19.         Town
of Waterford v. Pike Industries, Inc., 135 Vt. 193, 373 A.2d 528 (1977),
cited by applicant, addresses a different problem.  In that case, the town
sought to enjoin a factory owner from operating its plant and the factory owner
challenged the validity of the ordinance as an affirmative defense. 
Because the town sought to enforce the ordinance, it had the burden of proving
that the ordinance was validly enacted.  Id. at 195-96, 373 A.2d at 530.  

¶ 20.         The
validity of the City’s ordinance was never at issue in this case.
 Although the court asked applicant at the hearing how he could prove compliance
with the zoning ordinance if it was excluded from evidence, the order of proof
at the hearing as well as the court’s written decision demonstrate that the
court correctly placed the burden of proving the existence of a city zoning
ordinance—an issue about which there could have been little doubt in any
event—on the City.  The City ultimately met its burden of proof by
offering into evidence a certified, corrected copy of the ordinance after the
court reopened the evidence to correct the copying mistake. 

¶ 21.         Finally,
applicant argues that the Environmental Division applied the historic
preservation standards “in a mandatory fashion” and improperly declined to
consider the economic and technical feasibility of the internal living
space.  Section 5.4.8 of the City’s zoning ordinance sets forth a series
of standards and guidelines for review of all applications involving historic
buildings.  It states that “[t]hese Standards
are intended to be applied in a reasonable manner, taking into consideration
economic and technical feasibility.”  The Environmental Division held that
the ordinance related only to external features and material considerations,
and that it would therefore not consider the economic and technical feasibility
of the internal functionality of the building.  Applicant argues
that the court should have considered that his proposed changes to the roof
were necessary to improve the single bathroom in the residential apartment in
the duplex, which currently has such a low ceiling that a person cannot stand
up fully in the shower area.  

¶ 22.         Our
goal in interpreting an ordinance, like a statute, “is to give effect to the
legislative intent.” Lubinsky v. Fair Haven Zoning Bd.,
148 Vt. 47, 49, 527 A.2d 227, 228 (1986).  “Our review of an
interpretation of a zoning ordinance by the Environmental Division is
deferential.” In re Toor,
2012 VT 63, ¶ 9, 192 Vt. 259, 59 A.3d 722.  We will overrule the
Environmental Division’s construction of the ordinance only if it is clearly
erroneous.  In re Pierce Subdiv.
Application, 2008 VT 100, ¶ 17, 184 Vt. 365, 965 A.2d 468. 
Because zoning ordinances limit common law property rights, any uncertainty
must be resolved in favor of the property owner. In re
Weeks, 167 Vt. 551, 555, 712 A.2d 907, 910 (1998). “[W]e will not
enforce laws that are vague or those that delegate standardless
discretion to town zoning boards.” In re Appeal of JAM
Golf, LLC, 2008 VT 110, ¶ 17, 185 Vt. 201, 969 A.2d 47.  These
rules of construction require the Environmental Division to interpret vague and
uncertain zoning provisions in favor of property owners in the first
instance.  In reviewing the work of the Environmental Division, we
recognize their special expertise in interpreting zoning ordinances and give deference
to their rulings in this area.  

¶ 23.         We
conclude that the Environmental Division’s interpretation of § 5.4.8 is
reasonable.  Other than the first standard, which addresses changes in the
use of a historic building, such as from residential to commercial use, the
standards relate to the external appearance and materials of historic
buildings.  No mention is made of the functionality of the internal living
space.  The Environmental Division’s interpretation is also consistent
with the City’s interpretation of the relevant provision of the ordinance.
 The City planner testified below that the City considers internal use in
reviewing proposed changes to a structure under the zoning ordinance only if
there is a change of use or a change of the intensity of use, such as an
increase in the number of residential units in a building.  Otherwise, the
City looks only at exterior alterations.  Applicant points to other
portions of the City’s zoning ordinance that do address internal use such as the
inclusionary housing regulations, which set the minimum size of a unit and
minimum bedroom size.  The presence of these policy provisions in other
parts of the zoning ordinance does not mean that the City must also consider
the feasibility of desired internal uses in acting on a permit application
involving alterations to a historic building.  Applicant has not shown
that these provisions are relevant to this case.  

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
It is undisputed that planner O’Neil was an assistant administrative officer
assigned to review appellant’s permit application and was authorized to act on
behalf of the zoning administrator in this case.  Section 2.3.2 of the
City’s zoning ordinance includes such assistants within the definition of
“zoning administrative officer.”    

 





[2] 
The court also concluded that even without the denial of the permit by the City
planner, the referral to the DAB within thirty days satisfied the requirement
of a referral to an appropriate municipal panel as required by 24 V.S.A.
§ 4448(d).  Because we agree with the Environmental Division that the
“deemed approved” deadline was satisfied by the denial of the permit by the
City planner, we do not address the issue of whether referral to the DAB, which
serves as an advisory body to the Development Review Board, provides a second
basis for concluding that the City responded in a timely fashion to appellant’s
zoning application.