*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-080

OCTOBER TERM, 2014

| | |
|---|---|
| Kayla L. Herrick | } APPEALED FROM: |
| | } |
| | } Superior Court, Windsor Unit, |
| v. | } Family Division |
| | } |
| | } |
| Edmund Vigneault | } DOCKET NO. 48-2-11 Wrdm |

Trial Judge: Harold E. Eaton, Jr.

In the above-entitled cause, the Clerk will enter:

Mother appeals pro se from a decision of the Superior Court, Family Division, granting father's motion to modify parental rights and responsibilities and parent–child contact. Mother contends the trial court erroneously: (1) excluded or ignored key evidence; (2) failed to consider the testimony of mother's two witnesses; and (3) inconsistently allowed an unsupervised visit with mother on the day of the hearing. We affirm.

The record evidence and findings may be summarized as follows. The parties are the parents of two children, aged seven and four at the time of the hearing in this matter. Under a family court order issued in August 2011, the parties shared physical and legal parental rights and responsibilities.

The instant proceeding was triggered by events that occurred in October 2013. The record shows, and the court found, that on October 9, 2013, mother went to a shooting range in Hartland, Vermont with a loaded .45-caliber handgun, fired one shot, and then called the Lebanon Police Department to report that she was despondent and suicidal. Mother then spoke with an officer in the Department for almost two hours. Although she declined to give her location, the police were able to locate her through her cell phone, took her into protective custody, and brought her to Dartmouth Hitchcock Medical Center, where she was admitted for inpatient psychiatric treatment. A loaded .45-caliber handgun was found in mother's car. The hospital evaluation at the time of mother's admission noted symptoms of depression, suicidal ideation, and borderline personality disorder, as well as a history of depression and labile or unstable mood. Mother was discharged from the hospital two days later with a plan for follow-up outpatient care.

In response to these events, father filed a motion for emergency relief and a motion to modify the August 2011 order, seeking sole custody of the children and supervised parent–child contact with mother. The trial court granted the emergency motion on a temporary basis pending a final decision on the motion to modify. In December 2013, the court issued a follow-up order specifying that mother's supervised visits with the children could occur at her parents' house, at mother's house with certain specified supervisors, and at the offices of Emerge.

An evidentiary hearing on the modification motion was held in February 2014. Father called mother as a witness and testified on his own behalf. Mother called two witnesses: her sister and mother. In addition, the court admitted exhibits consisting of a police report concerning the incident; mother's medical records at Dartmouth Hitchcock; Facebook posts from mother; emails between mother and father; mother's treatment records at West Central Behavioral Health; and a record of mother's supervised visits with the children.

In March 2014, the court issued its decision. In summary, the court found that the evidence was insufficient to determine "the current state of mother's mental health" and whether the depression, suicidal ideation, and related mental-health problems evidenced by the events in October 2013 had been adequately treated. In particular, the court observed that "[w]e are now nearly six months past the October incident, with no opinion from any professional that mother's mental-health issues have been treated satisfactorily." Although the records from West Central Behavioral Health showed at least two counseling sessions with mother, they contained no professional "opinion that mother has achieved a level of emotional stability," and the therapist's notes from a visit in late January 2014, a few weeks before the hearing, indicated that additional therapeutic work was required.

The court thus found a real, substantial, and unanticipated change of circumstances, and addressed the relevant statutory criteria to determine the best interests of the children. The court found that while both parents have a loving relationship with the children, mother had not attempted to maximize her contact with them. While she had done well during visits supervised by her mother and sister, the court noted that she had refused to utilize the services of Emerge for supervised visits because she did not like their presence, suggesting that she did not fully appreciate the gravity of her actions or the need for supervision. The court further found from the parties' emails and testimony that father was more disposed to foster a positive relationship with mother, while mother was inclined to denigrate father.

The court determined to award sole parental rights to father "primarily because he has provided a safe and stable home for the children" while striving to maintain their relationship with mother, who had not shown that she had attained "an emotional state of health" sufficient to safely parent the children. The court provided for continued supervised visits with mother until such time that she produced "a written opinion from a qualified mental health provider that she presents no current danger to the children and has the ability to safely parent them without supervision," at which time the court provided a detailed schedule of unsupervised parent–child contact with mother.[1] This appeal by mother followed.

Mother contends the trial court erred in excluding a report concerning her medical history from Dartmouth Hitchcock. Mother attempted to admit the document during her cross-examination of father. Father objected on the ground that he had no personal knowledge of the records, and also that it was hearsay. The court sustained the objection and explained to mother, "You can testify about it, but he can't testify, okay?" Father subsequently answered several questions about mother's mental-health history about which he had personal knowledge. Mother did not attempt to introduce the records during her own case. Given these circumstances, the trial court's ruling was not error. There was no foundation to show that father had direct

_____

[1] The record shows that, in June 2014, while this appeal was pending, the trial court issued an order finding that mother had satisfied the conditions for unsupervised contact, and authorized such contact under the terms specified in its decision.

personal knowledge of the contents of mother's medical records, and the records were subject to a hearsay challenge. Even if the trial court's ruling had been error, mother has not alleged or demonstrated that she was prejudiced by the ruling. See Griffis v. Cedar Hill Health Care Corp., 2008 VT 125, ¶ 19, 185 Vt. 74 (noting that even where evidence is erroneously excluded, its exclusion is not grounds for reversal absent showing "that its exclusion likely affected the outcome of the case").

Mother also claims that she was denied an "opportunity to speak on her own behalf." The record shows that mother called two witnesses, her sister and mother. When asked by the trial court if she had "any other witnesses you'd like to call," mother responded, "I do not." When further asked "Is there additional testimony that you'd like to give?" she answered "No, I do not." Thus, the record does not support mother's claim that she was denied an opportunity to testify.

Mother also asserts that she was not afforded an opportunity to admit into evidence a no-trespass order from several years earlier and a joint-custody agreement proposed by father. The record again does not reveal any proffer or attempt to admit the documents in question. See V.R.E. 103(a). Accordingly, there is no basis for a finding of error.

Mother further asserts that the trial court ignored key evidence from West Central Mental Health Services. Although the court admitted mother's counseling records during the hearing, mother claimed that these records were incomplete, and in particular did not show all of her therapy appointments. One week after the close of evidence, mother submitted a document to the court that appeared to be one-page printout listing ten therapy appointments. Mother contends the trial court erred in ignoring the document, particularly after stating at the conclusion of the hearing that it would "look forward to whatever you want to provide us." The record shows, however, that the court considered the evidence to be closed and was simply inviting the parties to submit proposed findings and conclusions, not additional evidence.

Furthermore, while the trial court has "broad discretion" to permit additional evidence to be offered after the close of evidence, In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 16, ___ Vt. ___, it also has broad authority to control the introduction and order of evidence. Bevins v. King, 147 Vt. 203, 207 (1986). Whether the trial court here should have re-opened the evidence on its own motion to consider mother's late submission or was correct in ignoring it, however, is largely immaterial. The court's decision on the motion was based primarily on mother's failure to establish through the opinion of a qualified mental-health professional that she had reached a level of emotional stability to safely care for the children, and not on the specific number of counseling sessions that she had attended. Accordingly, even if the court erred in failing to reopen the evidence to consider mother's late submission, we are satisfied that it did not prejudicially affect the result. Griffis, 2008 VT 125, ¶ 19.

Mother next asserts that the trial court failed to "take[] into account" the testimony of her mother and sister concerning the positive interactions between mother and the children during supervised visits. On the contrary, the court acknowledged the testimony, finding that "[m]other has done well with the children when she has had them either with her sister or with her parents," but further found that mother had not taken advantage of other opportunities to call or visit the children. Mother similarly claims that the trial court failed to properly consider her relationship with the children prior to the October 2013 incident. The court expressly recognized, however, that mother had a close and loving relationship with the children developed over years; its

3

decision was based on overarching considerations concerning the children's need for safety and stability.

Mother also contends the trial court's decision to allow her an unsupervised visit with the children after the hearing was inconsistent with and undermines its conclusion that she was not able to safely parent the children.[2] The record discloses that, at the conclusion of the hearing, mother asked if she could take the children out to dinner that evening without supervision to celebrate her birthday. The trial court granted the request "for today only" with careful limitations, requiring that mother pick up the children at their after-school program and that father retrieve them directly from the restaurant. The court explained, "I don't know where I'm going to go once I've read all of these exhibits and considered the pleading papers that are going to be submitted. But I am confident that the children will be safe in your care today." The court's finding that the children would be safe with mother the evening of the hearing was limited, and is not inconsistent with its ultimate award of parental rights and responsibilities to father.

Finally, mother claims that the court overlooked two letters from the discharging physician at Dartmouth Hitchcock stating that mother was not a danger, and evidence that father improperly removed the younger child from daycare, attempted to alienate the children from mother, and abused family pets. The purported evidence does not appear in the record, which does not support the claims. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

---

[2] Because the trial court has subsequently eliminated the requirement that visitation be supervised, the argument that its requirement for supervised visitation is inconsistent with the court's grant of mother's request for unsupervised time with the children the evening of the hearing is likely moot. We address mother's argument here because she challenges not only the court's order for supervised contact, but also its award of physical and legal parental rights and responsibilities to father.

4