STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 114-9-16 Vtec |

| | |
|---|---|
| Pintair DP 15-06 | DECISION ON MOTION |

**DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Neighbors appeal a decision by the Town of Williston Development Review Board (DRB) to grant a discretionary permit that would allow Alex Pintair (Mr. Pintair or Applicant) to subdivide a 1.7-acre lot into two parcels and build a duplex in place of an existing barn (the Project).[1]  Following pre-trial motions, neighbors Kevin and Zuzana Brochu (the Brochus or Appellants) have limited their appeal to challenge the requirements for setbacks, landscaped buffers and frontage.

Pending before the Court are cross-motions for summary judgment by the Town of Williston (Town), represented by Attorney Paul Gillies, Esq., and the Appellants, represented by Attorney Alexander J. LaRosa, Esq.  The Town filed its motion for summary judgment on November 2, 2016.  The Brochus filed a response and a cross-motion for summary judgment on November 30, 2016.  The Town then filed a response and reply on December 16, 2016, and the Brochus filed a final reply on January 11, 2017.  Mr. Pintair did not submit any filings regarding the pending motions.

**Legal Standard**

Summary judgment may only be granted when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a) (applicable here through V.R.E.C.P. 5(a)(2)).  The moving party shows that no material facts are in dispute principally by filing a statement of undisputed facts supported by

---

[1] The Unified Development Bylaw for the Town of Williston, Vermont uses the term "discretionary permit" to refer to all the types of approvals within the jurisdiction of the DRB, as contrasted with "administrative permits" which are issued directly by the zoning administrator.  See Unified Development Bylaw § 4.3.

materials in the record. V.R.C.P. 56(c)(1)(A). In reviewing a motion for summary judgment, the Court: 1) accepts as true any factual allegations made in opposition to the motion by the non-moving party, as long as they are supported by affidavits or other evidentiary material; and 2) gives the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted).

**Factual Background**

In their motions, the parties filed and responded to statements of material facts. We recite the undisputed facts of the case as presented by the Town and the Appellants in their statements and documents attached as exhibits to their filings:

1.      Alex Pintair received a discretionary permit from the DRB on August 23, 2016 to subdivide a 1.7-acre tract at 7997 Williston Road in Williston, Vermont (the Town).

2.      The permit allows Mr. Pintair to retain an existing four-bedroom house, garage and barn on the 0.5-acre Lot #1, and to demolish an existing barn on the 1.2-acre Lot #2 and build a duplex with three bedrooms per unit in its place.

3.      The Project is located in the Village Zoning District (VZD) and is also within the Williston Village Historic District.

4.      The Project is located on U.S. Route 2, which is also named Williston Road.

5.      Development in the VZD is regulated by the Unified Development Bylaw for the Town of Williston, Vermont (Bylaw), Chapter 42. The Bylaw was adopted on June 1, 2009 and last amended on August 18, 2015.

6.      All lots in the VZD are required to have at least 40 feet of frontage on an existing or proposed public or private road. Bylaw § 42.3.4. Lot #2's road frontage on U.S. Route 2 is 45.4 feet.

7.      The Town requires a minimum setback of 50 feet from the right-of-way of U.S. Route 2, "where it is town policy to maintain a wide, landscaped 'greenbelt.'" Bylaw § 42.3.3.2.

8.      The 50-foot setback from U.S. Route 2 "must be landscaped as a Type I, III, or IV buffer in compliance with Chapter 23." Bylaw § 42.3.3.5.[2]

9.      A Type I or "existing vegetation" buffer is:

> composed primarily of existing woodland or forest that must be of sufficient height and density to provide an effective visual buffer. Where this type of buffer is proposed, the landscaping plan shall include photographic documentation of the buffer's effectiveness. The landscaping plan shall also propose supplemental new plantings where the existing vegetation is too thin to be an effective visual buffer. This type of buffer must be relatively wide to sustain its habitat value and to function as a woodland or forest that needs only minimal maintenance. Other types of buffers may be narrower, but are assumed to require regular maintenance.

Bylaw § 23.3.2.2.

10.     A Type III or "informal plantings" buffer:

> must be composed of a planted area that includes a ground cover, a partial understory of shrubs and small trees, and major trees. The minimum density of planting per 100 feet of buffer shall be a full ground cover, two major trees, three ornamental or understory trees, and any combination of shrubbery or flower beds that occupies at least 50% of the area at the time of planting. This type of buffer can be used in many circumstances. The DRB may require an earthen berm, a screening fence or wall, and/or additional plant materials where the uses being separated are substantially different in intensity. The buffer width reduction provided for in WDB 23.3.3 shall be given where the DRB requires a berm or fence.

Bylaw § 23.3.2.4.

11.     Residential subdivisions with one- and two-family dwellings need to provide minimum landscaped buffers when they are next to other residential subdivisions. A minimum buffer width of 9 feet is required with Type III buffers. Bylaw Table 23.A.

12.     Residential subdivisions with one- and two-family dwellings also must provide landscaped buffers when they abut mixed use developments that include residential use. A minimum buffer width of 23 feet is required with Type III buffers. Id.

---

[2] This section of the Bylaw refers to the "required setbacks in the RZD" in describing the permitted uses in the setback from U.S. Route 2 and other roads. "RZD" is the Residential Zoning District, another zoning district identified by the Town. The Court assumes this is a misprint, and that the Bylaw should instead refer to the VZD, or the Village Zoning District, which is the subject of Chapter 42 and the zoning district in which the Project is located.

13. Performance standards for the required landscaping are intended to, in part, protect functional existing vegetation as development occurs, ensure land use compatibility, and maintain and enhance the appearance and character of individual developments and the community. Bylaw Chapt. 23.

14. The current lot, prior to subdivision, is shaped like a long rectangle, with the short sides on the front and rear property lines.

15. Lot #2 includes the proposed duplex situated in the rear of the current parcel. Lot #2 also has a long, narrow section along the eastern boundary of Lot #1 up to U.S. Route 2 (the "panhandle").

16. No changes are proposed on the Project within the 50-foot setback from U.S. Route 2. Existing landscape in the setback includes a grassy lawn, deciduous trees and shrubs. An existing driveway that serves the existing home on Lot #1 is also in this setback and runs through a stand of mature and understory maple trees.[3]

17. The Applicant proposes to install a gravel drive running from the end of the existing driveway to the proposed duplex, which would be located behind the existing house.

18. The Applicant will need to remove some of the trees to extend the driveway to the duplex.

19. Lot #2 is primarily bordered by residential properties, with the exception of the property on its southeastern boundary, 8031 Williston Road, which is classified as "mixed use, including residential" for the purposes of determining the required landscaped buffers.

20. The access driveway for Lots #1 and #2 is contained in the 45.4-foot wide panhandle extending from Lot #2 that is covered with an existing stand of mature maple and understory trees.

21. The existing lot proposed for subdivision and the mixed-use property are buffered by the existing stand of mature maple and understory trees.

22. The Applicant proposes a Type III, 9-foot buffer along the external property boundary of Lot #2 adjacent to other residential uses where there is no existing vegetation.

---

[3] The existing driveway will be shared by Lots #1 and #2.

## Conclusions of Law

After the Town moved for summary judgment on the Appellants' Statement of Questions, the Appellants withdrew Questions 4–8 and cross-moved for summary judgment. The remaining questions are:

1. Does the [P]roject as proposed comply with the Town of Williston Unified Development Bylaw Sections 42.3.3 and 23 concerning required landscaping and buffers?
2. If the [P]roject is required to install either a type I, III or IV buffer within the 50-foot "greenbelt" along Route 2, does the [P]roject as proposed have sufficient frontage to provide access?
3. Does the [P]roject as proposed comply with any side, rear or front yard setbacks mandated by Williston Unified Development Bylaw Section 43.3.2?[4]

The material facts in this case are not in dispute and this case turns on the interpretation of the Town's zoning ordinance. The parties are therefore entitled to judgment as a matter of law.

### I. Front Setback

The Brochus contend that Lot #2 is not wide enough to meet the Town's zoning regulations for front setbacks and landscaped buffers. Their argument relies on inappropriately combining the requirements for a 50-foot landscaped setback from U.S. Route 2, and a landscaped buffer in the side yard. See Bylaw §§ 42.3.3.2 and 42.3.3.5. The Appellants seek to enforce the side yard buffer requirements within the front yard 50-foot setback from the road. Along with the 20 feet needed for a driveway, Lot #2 would need to be at least 52 feet wide at the point where it connects with U.S. Route 2 to comply with side yard requirements, according to the Brochus.[5] Bylaw § 13.2.6.2. Lot #2 is 45.4 feet wide at that juncture.

---

[4] Chapter 43 of the Bylaw deals with Parks and Recreation Impact Fees, and there is no section numbered 43.3.2. Based on the question, the Court interprets the question to refer to § 42.3.2, which states that "[s]etbacks from rear and side property lines may be controlled by the landscaped buffer requirements of Chapter 23 of this bylaw. Where the requirements of Chapter 23 do not apply, the minimum setback from both side and rear property lines is 10 feet."

[5] By overlapping the side yard and front yard buffer requirements, the Brochus contend Lot #2 can only use a Type I, III, or IV buffer within 50 feet of U.S. Route 2 and therefore the buffer abutting the mixed-use property at 8031 Williston Road must be at least 23 feet wide. See Bylaw §§ 42.3.3.2, 42.3.3.5, and Table 23.A. That buffer, combined with the 20 feet required for a driveway and the 9-foot landscaped buffer required next to Lot #1 totals 52 feet. See id. at § 13.2.6.2 and Table 23.A.

We disagree.  Side yard setbacks and side yard buffers are not applied within front yard setbacks.  Rather, front yard setbacks supersede any side yard requirements.

The Bylaw expressly states that the landscaped buffer requirements supersede the side and rear setbacks, but not the front yard setback.  Bylaw § 23.3.5 ("Do landscaped buffer requirements eliminate setback requirements?  Where they are required, they eliminate side and rear setbacks, **but do not eliminate front** setbacks.  Landscaped buffers replace rear and side yard requirements for uses other than one and two family dwellings.") (emphasis added).  The Bylaw also states that the side and rear setbacks may be controlled by the landscape buffer requirements, omitting any mention of front setbacks.  Id. § 42.3.2 ("Must development in the VZD be set back from property lines?  Yes.  Setbacks from rear and side property lines may be controlled by the landscaped buffer requirements of Chapter 23 of this bylaw.").

In interpreting zoning regulations, our goal "is to give effect to the legislative intent."  In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)).  We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the [regulation]."  In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  Because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner.  Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.

Taking Chapters 23 and 42 together, we conclude that the Bylaw's plain language requires that the front yard setback must prevail over the landscaped buffer requirements, rather than requiring the property owner to meet both requirements in the same space.  Thus, the Project must conform to the 50-foot setback requirement as measured from U.S. Route 2, and the landscaped buffer requirements for side yards begin where the front setback ends.

Here, the Project does not propose any changes inside the 50-foot setback to U.S. Route 2.  An existing stand of mature maple trees lines the driveway on both sides, and satisfies the requirements in a front setback for either a Type I buffer, which is described as existing vegetation that is "composed primarily of existing woodland or forest," or a Type III buffer, which is described as "informal plantings" and includes a ground cover, a partial understory of shrubs and small trees, and major trees."  Bylaw § 42.3.3.5 (describing the types of landscaped buffers

required in the front yard setback), § 23.3.2.2 (defining a Type I buffer) and § 23.3.2.4 (defining a Type III buffer).

The Court concludes that the landscaped buffer requirements for side yards in Chapter 23 Table 23.A do not apply in the front yard setback, and that the Project complies with the Bylaw §§ 42.3.3 concerning the landscaping required in a 50-foot front setback from U.S. Route 2.

In addition, Lot #2's 45.4 feet of frontage along U.S. Route 2 is sufficient. All lots in the VZD are required to have at least 40 feet of frontage on an existing or proposed public or private road. Bylaw § 42.3.4. Lot #2's road frontage on U.S. Route 2 is 45.4 feet.

### II. Landscaped Buffers in Side and Rear Yards

Having answered Appellants' Questions 1 and 2 concluding that the Project complies with the issues raised in those questions, the Court now turns to Question 3, which asks whether the Project complies with any side, rear or front yard setbacks mandated by the Bylaw. As discussed above, the Project complies with the required 50-foot front yard setback.

Under the Town's zoning regulations, the side and rear yard setbacks are controlled by the landscaped buffer requirements set forth in Table 23.A. Id. at § 42.3.2. Bylaw Table 23.A requires a minimum buffer width of nine feet for Type III buffers between residential properties. The Applicant proposes a Type III buffer nine feet wide along Lot #2's borders where the lot abuts other residential properties. This Type III buffer spans the western and northern boundaries of Lot #2 and complies with the Bylaw.

This same Type III, nine-foot wide buffer is proposed on the northern half of the eastern boundary of Lot #2. This portion of the landscaped buffer also complies with the Bylaw. The Type III buffer on the eastern boundary ends at the location of an existing stand of mature maple trees and understory trees. The existing stand of trees spans the southern half of the eastern boundary of Lot #2 in the area where Lot #2 abuts a mixed-use property.

Appellants assert that a 23-foot wide Type III buffer is required along the southern half of the eastern boundary where Lot #2 abuts the mixed-use property. See Table 23.A. This area of Lot #2 is configured with a driveway through the 45.4-foot-wide panhandle. As it exists pre-development, the panhandle contains the existing stand of mature maple and understory trees

and the existing driveway for Lot #1. The only development proposed in this area is the Lot #2 access driveway. The duplex on Lot #2 will be located in the rectangular portion of Lot #2 north of the panhandle.

Pursuant to Bylaw § 23.2.2, existing vegetation that can serve landscaping functions shall be retained to the extent possible. Furthermore, the landscaping standards of the Bylaw are intended, in part, to protect functional existing vegetation, ensure land use compatibility, and maintain and enhance the appearance and character of individual developments and the community. See Id. Chapt. 23. Currently, the panhandle section of proposed Lot #2 containing the existing stand of mature maple and understory trees and the existing driveway for Lot #1 serves as the landscaped buffer between Lot #1 and the neighboring mixed use lot. This function will continue under the proposed Project as no changes are proposed in this area other than continuing the access driveway for Lot #2 from the end of the driveway for Lot #1 and extending through the existing tree stand. Bylaw § 23.3.4.1 allows for driveways to cross through landscaped buffers.

The practical purpose and function of a landscaped buffer in the panhandle is to screen existing Lot #1 from the neighboring mixed use lot. We therefore consider the landscaping character of the existing stand of trees. The stand of trees is more than 45 feet wide. Even if we ignore the exemption afforded driveways in landscaped buffers and subtract the 20 feet required for the access drive, that still leaves 25 feet of existing trees to serve as a buffer. The Court concludes that the stand of maple trees and the understory trees meet the definition of a Type III buffer because it includes a ground cover, a partial understory of small trees and major trees. The panhandle section of Lot #2 therefore satisfies the Bylaw's minimum requirement of 23 feet of Type III landscaped buffer.

By utilizing the existing stand of mature maple and understory trees, and installing nine-foot, Type III buffers on the rest of Lot #2's boundaries, the Project complies with the landscaped buffer requirements as mandated by Bylaw Table 23.A, which controls the side and rear yard setbacks. Id. § 42.3.2.

## Conclusion

The Project complies with the Bylaw requirements for the front yard setback and frontage for properties along U.S. Route 2, and meets the landscaped buffer requirements for the side and rear setbacks. The Appellants' motion for summary judgment is therefore **DENIED**, and the Town's motion for summary judgment is **GRANTED**.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court.

Electronically signed on April 28, 2017 at 10:45 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division