STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 81-6-17 Vtec

| | |
|---|---|
| Ledoux Zoning Permit | DECISION ON THE MERITS |

This is an appeal of a zoning permit issued to Albert R. Ledoux by the Town of Fairfax Zoning Administrator on March 22, 2017 to construct a replacement home on his property at 17 Potter Road in Fairfax, Vermont.  William M. Bowman, III appealed that permit to the Town of Fairfax (Town) Development Review Board (DRB).  The DRB affirmed the Zoning Administrator's grant of a zoning permit and denied the appeal on May 30, 2017.  On June 28, 2017, Mr. Bowman appealed to this Court.

The Court conducted a trial on July 25, 2018 at the Vermont Superior Court, Franklin County Civil Division, in Saint Albans, Vermont.[1]  Prior to trial, the Court conducted a site visit at the subject property.

Mr. Ledoux is self-represented.  Mr. Bowman is represented by Jon Anderson, Esq.  The Town is represented by Ed Adrian, Esq.   Based upon the evidence presented at trial, which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

**Factual Findings[2]**

1.      Potter Road is located in Fairfax, Vermont.

2.      Potter Road is not a Class I, II, III, or IV public road.

3.      Potter Road is a private road as defined by § 7.6.A.2 of the Fairfax Development Regulations as amended on September 19, 2016 (the 2016 Regulations).

4.      Potter Road does not currently comply with the road and driveway standards stated in § 7.6 of the 2016 Regulations.

---

[1] The Town filed a motion in limine to prohibit the introduction of evidence related to state subdivision rules.  The Court **DENIED** the motion on the record at trial.

[2] The parties have stipulated to some facts.  The facts have been included in these findings, though may be reworded.

**17 Potter Road**

5.      17 Potter Road (the Property) is owned by Mr. Ledoux.  The Property is approximately 3.1 acres and is only accessible via Potter Road.  The Property does not have frontage on any public water.

6.      In 1981, the town issued a permit to the Property's prior owners for the construction of a single-family home.   At the time, the Property was part of a larger parcel entailing approximately 130 acres owned by the Property's prior owners.  A mobile home was placed on the Property in approximately 1981.

7.      A driveway connecting the Property to Potter Road has been in existence since 1981.

8.      Mr. Ledoux lived at the Property with his wife for approximately 3 years beginning in 1981.  Thereafter the Property was rented to tenants.

9.      17 Potter Road was reconfigured in 1988, if not before, via subdivision to approximately 3.1 acres.

10.     The 3.1 acres lot contained both the existing house and the existing waste water system. We have no evidence relating to the details of the remaining approximately 128 acres.

11.     The Property's mobile home was demolished in June 2017.

12.     In 2017, Mr. Ledoux filed a zoning permit application for a "2 story colonial with attached 2-car garage [and] covered porch / back deck" at the Property.  The house will have 3 bedrooms and two and a half bathrooms, and will be 28' tall, 25' wide, and 60' long.

13.     The application is subject to the 2016 Regulations.[3]

14.     The Zoning Administrator approved the application on March 22, 2017.  Mr. Bowman appealed that decision to the DRB, which concluded that the zoning permit was properly issued. Mr. Bowman subsequently appealed the DRB's decision to the Environmental Division on June 28, 2017.

**42 Potter Road**

15.     Mr. Bowman owns and resides at 46 Potter Road.  His property is approximately 10.1 acres and is accessible via Potter Road.

---

[3] The Regulations went into effect 21 days after adoption.  Regulations § 1.2; 24 V.S.A. § 4442(c)(1).

16.     In 2011, Mr. Bowman applied for a permit for a 2-lot subdivision on Potter Road. The Town granted the permit, but included a condition requiring a portion of Potter Road to be upgraded to road standards set forth in 2016 Regulations Article 7. Mr. Bowman chose not to move forward with the subdivision as conditioned.

17.     In August 2012, Mr. Bowman received a zoning permit to build a single-household dwelling at 46 Potter Road. Mr. Bowman was not required perform any upgrades to Potter Road as a condition to this permit.

18.     The Road Standards set out in the Regulations at that time are identical to those currently in effect.

**Discussion**

Four of the Appellant's Questions remain before the Court.

Question 2 asks whether the Property "has frontage on a Class I, II, III, or IV Public Road or a Town-approved private road as required by [2016 Regulations § 2.3.c.1]." Question 3 asks if it does not, "has access to [the Property] been approved by the [DRB] as required by [2016 Regulations § 2.3.c.2]." Question 4 asks whether "the proposed access is a private road or driveway." Question 5 asks whether the proposed access complies "with applicable design standards including [2016 Regulations § 2.3.c.2] and § 7.6 including . . . [§ 7.6.a.1.c]."

The parties have stipulated to the fact that Potter Road is not a Class I, II, III, or IV public road and is a private road. Question 2 is therefore narrowed to whether Potter Road is a "Town-approved private road." Question 4 is answered in the affirmative, Potter Road is a private road.

**I.      Whether Potter Road is a town-approved private road or right-of-way pursuant to § 2.3.c.**

The 2016 Regulations do not define "Town-approved private road," nor is there any identified process for gaining such approval. There have been multiple permits issued for construction on Potter Road that we look to for guidance.

In 2011, Mr. Bowman applied for and received a permit for a 2-lot subdivision on Potter Road. The DRB conditioned the approval as follows:

> The potion of Potter Road which will be used to access Lot 2 must be upgraded to current Town . . . road standards as described in Article 7, Section 7.6 of the [2016 Regulations]. And the current Town . . . Statement of Procedures and Standards Regarding Town

3

Highways, and must be verified in writing by an Engineer licensed in the State of Vermont, prior to the issuance of a Certificate of Occupancy for any residence of Lot 2.

Town Ex. 23.

From this, we conclude that Potter Road is not town-approved in its current condition.[4]

Other approvals have been granted on Potter Road, however. In fact, Mr. Bowman received permits for the construction of residences on 4 lots that are only accessible from Potter Road. See Town Ex. 20 (Lots marked Bowman, Collins, Lawyer, and Stillman). These lots were created in the 1980s, like the Property, prior to the DRB subdivision approval process.

Development approvals are also possible with a right-of-way access. To create a right-of-way access approved by the DRB, "approval shall happen concurrently with any other DRB approvals required." 2016 Regulations § 2.3.c.2. Approval requires the right-of-way to meet certain dimensional requirements, comply with the applicable standards set forth in § 7.6, and a consideration of relevant site conditions. Id. § 2.3.c.2(a)-(c). It is uncontested that Potter Road does not meet some of these standards, nor were we presented with any evidence that the DRB approved Potter Road as a right-of-way access concurrently with this application or any other permit applications relating to Potter Road. Therefore, Potter Road is not an approved right-of-way pursuant to § 2.3.c.2.

We conclude that Potter Road is not a town-approved public road, or a right-of-way approved by the DRB.

## II. Whether the Property is a pre-existing lot.

The Town offers that the Property is a pre-existing lot and therefore Mr. Ledoux has the right to replace the single-household dwelling previously located thereon. It asserts that, at the time the single-household dwelling and existing waste water system were first established on the larger lot, a subdivision permit was not required. Therefore, the Town considers the present application to seek approval to replace a home on a pre-existing lot. As a pre-existing lot, the Planning and Design Standards set forth in Article 7 are inapplicable.

---

[4] We note that the Town granted a permit to create a new lot, marked Daigle, which is only accessible by Potter Road. Appellant asserts that the issuance of the Daigle permit was in error, as the Town did not condition the permit to upgrade Potter Road. The Daigle permit was not offered into evidence at trial. However, the permit has now become a final decision. 24 V.S.A. § 4472(d). Even if the permit was issued in error it must be respected. See In re Ashline, 2003 VT 30, ¶¶ 10-11, 175 Vt. 203; Levy v. Town of St. Albans, 152 Vt. 46, 143 (1989).

Appellant offers that at the time the Property was created, it failed to have all the required permits. Specifically, Appellant looks to the state subdivision rules, effective as of 1982. Appellant Ex. 9. Appellant asserts that the Property was created in 1996 and at that time lots under 10 acres required a state subdivision permit. Therefore, Appellant asserts that the application as it exists today is deficient absent a state subdivision permit and must be denied.[5]

We first consider the Properties' status as a pre-existing lot under the Town's 2016 Regulations. In interpreting zoning ordinances, we apply the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). In interpreting an ordinance, "[w]e adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Lashins, 174 Vt. 467, 469 (2002) (mem.) (citation and quotation omitted).

We will sustain the interpretation of the administrative body responsible for its execution "absent compelling indication of error." Vermont Camping Ass'n v. Dep't of Emp't & Training, 145 Vt. 630, 633 (1985) (citation omitted). We defer "to a municipality's interpretation of its own ordinance if it is reasonable and has been applied consistently." In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 21, 199 Vt. 19 (citing In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 10, 186 Vt. 313 *overruled on other grounds* In re Confluence Behavioral Health, LLC, 2017 VT 112). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586.

Article 9 of the 2016 Regulations define "land development" as:

The division of a parcel into two or more parcels; the construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any building or other

---

[5] Appellant appears to assert that the lot was not created until 1996 when the prior record owners transferred the Property to Mr. Ledoux's wife by Quit Claim deed. Appellant Ex. 6. While the deed has legal significance of transferring the Property, for the reasons set forth below, the 1988 survey effectively created the Property.

structure; any mining or earth resource extraction; and any change in the use of any building or other structure, or land, or extension of use of land.

Under this definition, the home Mr. Ledoux proposes to construct on the Property is land development. In re Ledoux, No. 81-6-17 Vtec, slip op. at 4 n. 3 (Vt. Super. Ct. Envtl. Div. Jan. 4, 2018) (Walsh, J.).

The 2016 Regulations provide that:

No land development may be permitted on lots without either:

1. Frontage on:
   a. Class I, II, III, or IV public road
   b. Town approved private road
   c. Public Waters
2. Access by right-of-way approved by the DRB. Access by right-of-way requires DRB approval. DRB approval shall happen concurrently with any other DRB approvals required. If no other DRB approvals are required, such approval shall require Site Plan Review.
   a. Access by right-of-way shall be at least thirty (30) feet in width to serve up to two lots, units or principle uses (a driveway) and at least fifty (50) feet to serve three or more lots, units or principal uses (a road).
   b. Access by right-of-way shall comply with the road and driveway standards (as applicable) in Section 7.6
   c. The DRB shall consider the intended use of the property, safety, traffic, and road and site conditions in granting, conditioning, or denying approval.

2016 Regulations § 2.3.C.

Under the 2016 Regulations, Article 7 is "intended for use by the DRB during the evaluation of applications for Conditional Use, Site Plan or Subdivision approval." 2016 Regulations § 7.A. The standards do not apply to lots with prior DRB approval. Id. Further, "[l]ots created prior to the requirement for DRB approval (hereinafter called pre-existing lots) shall be presumed to have Town permission for a Single-Household dwelling . . . assuming that the structure meets the Dimensional Standards in Article 2, Section 2.3." Id.

The Town interprets the 2016 Regulations to allow the construction of a residence on a pre-existing lot that is located on a road that is not up to standards. The Town has provided multiple permits, including a permit issued to Appellant, and two memoranda issued by the prior Zoning Administrator showing a consistent application of this interpretation. Town Ex. 15. These permits were issued to applicants on lots larger and smaller than 10 acres. Id. We adopt the Town's consistent interpretation of its Regulations.

6

The first known documentation of the Property is from September 1988, when the previous owners filed a survey with the Town. See Town Ex. 17. In 1988, the Town did not have subdivision regulations and properties were subdivided simply by filing a survey. The Town's DRB review process began in 2005. Therefore, the Property, created in 1988, prior to DRB review and subdivision regulations, is a pre-existing lot. As such, we conclude that the application does not need to comply with the Article 7 standards. Ledoux, No. 81-6-17 Vtec at 5.

III.    **Whether the Property must have obtained a state wastewater permit when it was created.**

We next consider the potential need for the Property to have a state waste water permit. Appellant argues that a state waste water permit was required when the Property was created and, as such, the application as presented is deficient.[6]

We consider the Vermont Wastewater System and Potable Water Supply Rules (the Rules), effective September 29, 2007. The Rules apply, in part, to the construction of buildings "and the construction, modification, replacement, and operation of their associated" wastewater systems. Wastewater System and Potable Water Supply Rules, § 1-101(a). The Rules set forth many actions in which a permit is required from the Secretary of the Agency of Natural Resources. Id., § 1-303(a). Further, the Rules set forth multiple exemptions from the permitting requirements. Id., § 1-304(a).

The Rules exempt from the permitting requirements:

All buildings or structures, campgrounds, and their associated potable water supplies and waste water systems that were substantially completed before January 1, 2007 and all improved and unimproved lots that were in existence before January 1, 2007. This exemption shall remain in effect provided:

(i)     No action for which a permit is required under these Rules is taken or caused to be taken on or after January 1, 2007 unless such action is exempt under one of the other permitting exemptions listed in this section; and

(ii)    If a permit has been issued under these Rules before January 1, 2007 that contained conditions that required actions to be taken on or after January 1, 2007, including, but not limited to, conditions concerning operation and maintenance

---

[6] The Town disagrees. It interprets the wastewater permitting regime as being a state permit to place a septic system on a parcel, separate to the municipal permitting regime before the Court. It notes that applicants can seek this permit prior to the Town approving a subdivision. The issuance of a state wastewater permit, it asserts, does not result in Town approval. Therefore, the Town asserts the issuance, or lack thereof, of a state wastewater permit is not relevant when determining whether a lot is pre-existing under Article 7 or when considering the application before the Court.

7

and transfer of ownership, the permittee shall continue to comply with those permit conditions.

Id., § 1-304(a)(1)(A)(i)-(ii).

The Rules additionally exempt "a building or structure that is exempted . . . under these Rules that has been . . . voluntarily removed." Id., § 1-304(a)(21). Reconstruction of a removed building or structure is permitted without obtaining a permit if, in relevant part, the building is reconstructed in approximately the same location, the reconstruction does not result in an increase in design flow relative to the system, the potable water supply or wastewater system's operational requirements remain unchanged, the replacement structure is constructed within two years of removal (with the possibility of a case-by-case time extension to be granted by the Secretary of the Agency of Natural Resources), and there has been no other change requiring a permit under the Rules. Id., § 1-304(a)(21)(B)-(F).

Here, the Property's single-household dwelling and wastewater system were in existence prior to January 1, 2007. Therefore, the Property was exempt from the Rules prior to its removal pursuant to § 1-304(a)(1).

In 2017, the residence was voluntarily removed. The replacement home sought will be located in approximately the same place on the lot. There is no allegation that the reconstruction will increase the design flow or change the operational requirements of the system. Therefore, because the application seeks to replace an exempt building or structure, the reconstruction proposed is exempt from the permitting requirements set forth in the Rules pursuant to § 1-304(21). Thus, the Property does not require a waste water permit.

**IV.    Whether any assertion that the Property failed to have a state subdivision permit is barred by the statute of limitations.**

Appellant also argues that the Property required a state subdivision permit when it was created in 1988, pursuant to the 1982 state subdivision rules. Appellant Ex. 9.[7]

The statute of limitations applicable to this matter provides: "An action, injunction, or other enforcement proceeding relating to the failure to obtain or comply with . . . [a] permit may

---

[7] As noted above, Appellant asserts that the Property required a state waste water permit when it was created. Because of we conclude that the Property is exempt from the state waste water permitting regime, we focus our analysis here solely on the state subdivision permit.

be instituted . . . within 15 years from the date the alleged violation first occurred and not thereafter."  24 V.S.A. § 4454(a).

The specific violation (or non-compliance issue) alleged here is that the Property required a state permit in 1988 when it was subdivided with the resulting lot being less than 10 acres.  We note that at the time of the installation of the wastewater system in 1981, no permit was required, nor is a permit required now under the Rules.

Whether or not a permit was required in 1988 is immaterial to the application presently before the Court, as more than 15 years has passed since that time.  See 24 V.S.A. § 4454(a).  We cannot penalize the Property or the Property owner now, more than 30 years later, for the alleged failure of the prior owners to obtain all allegedly required permits when the Property was created.  See Inv. Props. v. Lyttle, 169 Vt. 487, 492 (1999) (noting the primary concern of the statute of limitations is fairness to the defendant, who "ought to be secure in [their] reasonable expectation that the slate has been wiped clean of ancient obligations.").  Therefore, we conclude the assertion that that Property failed to have a state subdivision permit in 1988 is barred by the statute of limitations.

## Conclusion

We conclude that Potter Road is not a Class I, II, III, or IV public road, town-approved private road, or right-of-way approved by the DRB.  As such, we answer Appellant's Questions 2 and 3 in the negative.  Based on the parties' stipulation, we answer Appellant's Question 4 in the affirmative, Potter Road is a private road.  We further conclude that Potter Road is does not comply with the standards set forth in 2016 Regulations § 2.3.c.2 or § 7.6.  We therefore answer Appellant's Question 5 in the negative.

We additionally conclude that the Property is a pre-existing lot because it's creation pre-dated DRB approval.  Therefore, improvements made to Potter Road to meet Article 7 standards of the Town's regulations are not required for the reconstruction of a single-household dwelling on the Property. Further, we conclude that the alleged failure of the prior owners to obtain state permits when the Property was created is immaterial to the present application because the Property is exempt from the state waste water permitting regime and the statute of limitations

9

period has run.  Therefore, the Court **UPHOLDS** the Town's issuance of the zoning permit.

A Judgement Order accompanies this Decision.  This completes the current proceedings before this Court.

Electronically signed on August 23, 2018 at 02:08 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division