2005 VT 15

## Theresa Morin v. Essex Optical/The Hartford

[868 A.2d 729]

No. 03-502

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed January 28, 2005

*Christopher McVeigh*, Burlington, for Plaintiff-Appellant.

*John W. Valente* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

¶ 1. **Dooley, J.** Claimant Theresa Morin appeals a decision of the Commissioner of Labor and Industry, holding that she is not entitled

to receive a cost of living adjustment to her workers' compensation permanent total disability benefits. The Commissioner found that cost of living increases to permanent total disability benefits under 21 V.S.A. § 650(d) were not available if the resulting benefit amount would be greater than claimant's average weekly wage at the time of her injury, and, on this basis, denied claimant's cost of living increase. We reverse.

¶ 2. Claimant was injured in 1990 when she fell and injured her lower back while employed by defendant, Essex Optical. The low back injury led to additional health problems including psychological depression and a stomach ulcer caused by the medications that claimant used to relieve her back pain. Claimant sought permanent total disability benefits, and in November 2001, the Commissioner awarded them. The employer appealed to the superior court, which affirmed in March 2003.

¶ 3. At the time of injury, claimant's average weekly wage was $475, and her resulting weekly workers' compensation benefit was $317. During the period between her injury and the Commissioner's compensation decision, she received a cost of living adjustment to her temporary benefits every July 1 as mandated by 21 V.S.A. § 650(d). As a result, she was receiving weekly compensation of $469 from July 1, 2001 through June 30, 2002. In July 2002, the annual cost of living adjustment would have increased her benefit to $489, an amount in excess of her $475 average weekly wage at the time of her injury. Defendant's insurance carrier refused to increase claimant's benefit. Claimant submitted the question to the Commissioner in a motion for summary judgment, arguing that she was entitled to continued yearly increases under 21 V.S.A. § 650(d) irrespective of whether her benefit amount exceeded her average weekly wage at the time of her injury. The Commissioner denied the motion, and claimant appealed. On appeal, the Commissioner submitted the following certified question: "Did the Department of Labor and Industry err in its interpretation of 21 V.S.A. § 650(d) in concluding that a permanent total disability claimant's weekly compensation rate could not exceed her average weekly wage?" We answer this question in the affirmative.

¶ 4. This appeal involves a question of law, and "[i]f the Commissioner's conclusions are supported by the findings and reflect the correct interpretation of the law, we will affirm the Commissioner's decision." *Butler v. Huttig Bldg. Prods.*, 2003 VT 48, ¶ 9, 175 Vt. 323, 830 A.2d 44. Further, we will defer to the Commissioner's construction of the Workers' Compensation Act, "absent a compelling indication of

error." *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999). Even under our deferential standard, we conclude that the Commissioner's decision in this case is not supported by the findings and reflects an unjust and unreasonable interpretation of the law. See *Clodgo v. Rentavision, Inc.*, 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997) (noting that we will not affirm an unjust interpretation).

¶ 5. The Commissioner's decision in this case was brief, essentially reiterating the holding of *Patch v. H.P. Cummings Constr.*, Op. No. 49-02WC (Jan. 2, 2003), which examined the question in more detail and held that 21 V.S.A. § 601(19) caps compensation for permanent disability benefits at average weekly wage at the time of claimant's injury. In reaching this conclusion, the Commissioner rejected the argument that the statute, § 601(19), explicitly caps only *temporary* disability benefits and, therefore, does not support a cap on *permanent* disability benefits. When examining the statute, which was amended in 1994 to establish the cap on temporary disability benefits, the Commissioner reasoned: "the Legislature did not change this Department's well-established statutory and regulatory interpretation of the Act to limit all benefits — temporary and permanent — to the average weekly wage." *Patch,* slip op. at 14. The Commissioner concluded: "To apply [Cost of Living Adjustments (COLAs)] in this case involving a low-wage earner would be to depart from this Department's precedent, which the Legislature has chosen not to change, and which would be contrary to the legislative will to change now." *Id.* The decision cited three earlier decisions, discussed *infra*, that were apparently the basis for the Commissioner's conclusion that the COLA limitation was well established with respect to both temporary and permanent total disability compensation.

¶ 6. On appeal, claimant argues that the Commissioner's decision is inconsistent with 21 V.S.A. § 650(d), is unsupported by § 601(19), and is not based upon a consistent policy of capping permanent total disability benefits at the claimant's average weekly wage at the time of injury prior to *Patch*. Defendant responds that the plain language of § 601(19) commands the Commissioner's decision and otherwise relies upon the Commissioner's analysis in *Patch*. We agree with claimant that the statute does not authorize the capping of permanent disability benefits.

¶ 7. In interpreting a statute our overall goal is to give effect to the Legislature's intent. *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 7, 175 Vt. 61, 819 A.2d 727. We do so by looking to the legislation's plain meaning, and we will not read terms into the statute unless necessary to

make the statute effective. *Huntington v. McCarty*, 174 Vt. 69, 73, 807 A.2d 950, 954 (2002). Further, because the Workers' Compensation Act is remedial in nature, we construe it liberally to allow benefits, "unless the law is clear to the contrary." *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991).

¶ 8. Claimant relies upon 21 V.S.A. § 650(d), which provides:

> Compensation computed pursuant to this section shall be adjusted annually on July 1, so that such compensation continues to bear the same percentage relationship to the average weekly wage in the state as computed under this chapter as it did at the time of injury.

It is undisputed that claimant's workers' compensation amount is governed by § 650(d) and, absent a cap imposed by another section, requires an annual adjustment in that amount. Claimant received that adjustment in each year before the year in dispute.

¶ 9. Defendant relies upon 21 V.S.A. § 601(19), arguing that "under the plain meaning of [that section] the claimant's workers' compensation benefit is capped at the full amount of her average weekly wage." Section 601(19) states:

> "Minimum weekly compensation" shall mean a sum of money equal to 50 percent of the average compensation, rounded to the next higher dollar. However, solely for the purposes of determining permanent total or partial disability compensation where the employee's average weekly wage computed under section 650 of this title is lower than the minimum weekly compensation, the employee's weekly compensation shall be the full amount of the employee's average weekly wages. For the purpose of determining temporary total or temporary partial disability compensation where the employee's average weekly wage computed under section 650 of this title is lower than the minimum weekly compensation, the employee's weekly compensation shall be the employee's weekly net income.

Defendant's plain meaning argument is apparently based on the second sentence of the section. That sentence applies, however, only "where the employee's average weekly wage computed under section 650 of this title is lower than the minimum weekly compensation." At the time of injury, claimant's average weekly wage was $475 per week and, as conceded by defendant's counsel at oral argument,

was above the minimum weekly compensation then in effect.[1] Indeed, even if this statute were construed to apply beyond initial calculation of the compensation rate, claimant's average weekly wage of $475 continues to be higher than the current minimum of $305.[2] Workers' Compensation Rule 16.1000, 3 Code of Vermont Rules 24 010 003-17 to -18 (2004), available at http://www.state.vt.us/labind/wcomp/Rule16.rates.htm (last modified Nov. 18, 2004) [hereinafter Workers' Compensation Rule]. Therefore, we find that the plain language of § 601(19) does not support the Commissioner's decision and, in fact, bears no relevance to the resolution of the submitted certified question. In addition, no other section explicitly supports a cap on permanent disability compensation amounts. Section 645(a) provides that the amount of compensation for permanent total disability is 66 2/3% of the employee's average weekly wage "computed as provided in section 650." Section 650 contains no cap, and, as set forth above, requires the annual adjustment.

¶ 10. We are left then with the *Patch* decision, where the Commissioner held that the Department always capped permanent disability compensation at a claimant's average weekly wage at the time of the injury and the legislative intent was to continue that policy. This determination was largely based on the Commissioner's interpretation of the effect of a 1994 amendment to the workers' compensation statute. In 1994, the Legislature amended § 642 with respect to compensation rates for *temporary* disability compensation. As amended, the statute grants "compensation equal to two-thirds of the employee's average weekly wages, but not more than the maximum nor less than the minimum weekly compensation, *provided that the weekly compensation shall not be greater than the injured employee's weekly net income.*" 21 V.S.A. § 642, as amended by 1993, No. 225 (Adj. Sess.), § 6. The workers' compensation rules reiterate that "in no event may a claimant's compensation rate for temporary total disability exceed his or her weekly wage or his or her weekly net income."

---

[1] The minimum and maximum weekly compensation rates are set in Workers' Compensation Rule 16 and are adjusted every July 1 for a cost of living increase in accordance with 21 V.S.A. § 650(d). From July 1, 1990 to July 1, 1991, the minimum weekly compensation was $187, an amount below claimant's average weekly wage of $475. Workers' Compensation Rule 16.1000, 3 Code of Vermont Rules 24 010 003-17 to -18 (2004).

[2] At oral argument, counsel for defendant acknowledged that claimant's average weekly wage has never been lower than the minimum weekly compensation rate.

Workers' Compensation Rule 16.2000, at 24 010 003-18 (2004). No such rule exists for permanent total disability compensation, and the statute does not explicitly apply to such compensation.

¶ 11. Nevertheless, *Patch* concluded that the amount of claimant's permanent disability compensation could not exceed her average weekly wage. Although the statutory bar to receiving benefits above one's weekly net income applies only to temporary permanent benefits, *Patch* cited to a long-standing departmental policy against awarding both temporary and permanent benefits above weekly wages. In *Patch*, the Commissioner reasoned that the Legislature must have been aware of this policy, and failed to change it with respect to permanent total disability compensation.

¶ 12. We cannot endorse the Commissioner's method of determining legislative intent. If the Legislature intended to retain a policy of applying caps to both temporary and permanent disability compensation, it would have amended both the statute governing permanent total disability compensation and that governing temporary compensation, or it would have amended neither arguably leaving the issue to the Commissioner's policy. By amending one statute, and not the other, it demonstrated that it intended that the two types of compensation be treated differently. See *In re Munson Earth Moving Corp.*, 169 Vt. 455, 465, 737 A.2d 906, 913 (1999) ("Where the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly.").

¶ 13. Even if we agreed with the Commissioner's theory of statutory construction, however, we would not apply it in this case. The Commissioner's conclusion that the Department had a long-standing policy of capping both temporary and permanent total disability compensation amounts depends upon three earlier decisions. See *Roethke v. Jake's Original Bar & Grill*, Op. No. 51-99WC (Jan. 19, 2000); *Runnals v. Can Do Special Events*, Op.. No. 56-96WC (Oct. 5, 1996); *Fischer v. Karme Choling*, Op. No. 28-93WC (Jan. 4, 1994). Only one of these decisions precedes the Legislature's 1994 amendment, see *Fischer*, and it is a temporary total disability case that did not involve a payment cap. Because *Fischer* involved temporary benefits, it could not have demonstrated to the Legislature a long-standing policy to impose a cap on permanent total disability compensation. Of the remaining decisions only one, *Roethke*, involves the imposition of a cap on the amount of compensation. It is, however, a temporary total disability case, in which the Commissioner relied primarily on the 1994 amend-

ment to § 642. The decision does discuss § 601(19) in the context of a case where the claimant's average weekly wage at the time of the injury was below the minimum weekly compensation amount and the claimant seeks the benefit of annual increases in the minimum weekly compensation amount. The holding in *Roethke* that the compensation amount could not exceed the claimant's average weekly wage, even if that amount were below the minimum weekly compensation amount, was purportedly also applied to permanent total disability compensation, even though such compensation was not before the Commissioner. *Roethke*'s statements concerning permanent disability benefits were dicta and cannot be taken as a holding that there has been a long-standing policy to cap permanent total disability compensation at average weekly wages at the time of injury. The first clear articulation of such a policy was *Patch*, decided only in 2003.

¶ 14. Although it is not determinative, we find the distinction between temporary and permanent disability compensation to be rational and consistent with the statutory construction rule that the workers' compensation statutory scheme is to be liberally construed so as to provide workers with benefits, unless the Legislature specifically designates to the contrary. *Surdam*, 156 Vt. at 590, 595 A.2d at 266. As defendant argues, capping the cost of living adjustment for temporarily disabled workers provides an incentive for the worker to regain functionality and return to work as soon as possible. Once the Department finds a worker to be permanently and totally disabled, however, there is no expectation that the worker will return to work and no incentive for that purpose is appropriate. See *Wroten v. Lamphere*, 147 Vt. 606, 609-10, 523 A.2d 1236, 1238 (1987) (explaining purpose of permanent disability benefits).

*Reversed. The certified question is answered in the affirmative.*