EATON, J., dissenting.
¶ 51. The tuition benefit at issue in this case is not provided to claimant as part of her remuneration and should not be included in the calculation of claimant's average weekly wage. The majority's decision conflicts with the plain language of the Workers' Compensation Act and with controlling case law, and represents a vast judicial expansion of the definition of wages. For these reasons, I dissent.
¶ 52. An injured worker's disability benefit is based on the worker's average weekly wages. 21 V.S.A. § 650. Wages are defined by the Act to include "bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration." 21 V.S.A. § 601(13). At issue is whether the value of tuition-free course credits received by claimant are "other advantages" offered as a part of claimant's remuneration.
¶ 53. This question is plainly controlled by our recent decision in Lydy v. Trustaff, Inc., in which we held that employer-provided health insurance benefits were not "other advantages" received as part of the claimant's remuneration and should not be included in calculating the average weekly wage. 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150. We reasoned in Lydy that expanding the definition of "other advantages" to include employer health insurance "ignores the remainder of the statutory phrase, which limits 'other advantages' to those 'which the employee receives from the employer as a part of his or her remuneration.' " Id. ¶ 12. "To remunerate is to 'pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.' " Id. (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). The definition of wages in 21 V.S.A. § 601(13)"implies a payment actually received by an employee-it more closely refers to the actual earnings of the worker." Id. By *510 contrast, "[a]n employee is not paid for her work with health insurance; rather, health insurance is a fringe benefit of employment." Id.
¶ 54. The same reasoning applies to the tuition benefit at issue here. Claimant was not paid for her work with free classes. The tuition benefit was provided independently of claimant's take-home pay. There is no evidence that she received more money in her paycheck if she did not take a class, or that her overall salary was lower than it would have been due to the availability of the benefit. She continued to use the free tuition benefit through the fall of 2014, months after she stopped work due to her injury. The tuition benefit was not tied to claimant's job performance, title, or hours worked. It was a voluntary perk available to her and to any other employee. In fact, spouses and dependents of employees were also eligible for this tuition benefit, even if they were not employees themselves. The free classes provided to claimant were not part of her taxable income.[5] These factors indicate that the tuition benefit provided to claimant did not compensate her for services provided and thus was not a part of her remuneration.
¶ 55. The Appellate Division of the New York Supreme Court reached a similar conclusion in Blackwelder v. Faith Heritage School, 27 A.D.3d 1004, 811 N.Y.S.2d 225 (2006). In Blackwelder, an injured maintenance and custodial worker who had received free tuition for his three children from his employer sought to include the value of that tuition in the calculation of his average weekly wage. Id. at 225. The court affirmed the decision of New York's workers' compensation board that the tuition remission was not part of the worker's wages, relying on the following facts: the worker was paid at an hourly rate for a forty-hour week at a rate similar to his predecessor; his pay was unaffected by whether his children attended the school; the tuition remission was applied retroactively to the beginning of the school year in which the worker began his employment and continued after he could no longer work due to his injury; the employer considered the tuition benefit to be a fringe benefit similar to health benefits; and the tuition remission was not a taxable benefit according to the Internal Revenue Service. Id. For these reasons, the court concluded that the tuition remission was an additional benefit not given as remuneration for services provided by claimant, and therefore not "wages" within the meaning of New York's workers' compensation law. Id. at 226. The facts of this case are similar and lead to the same conclusion: "other advantages" does not include the tuition benefit provided to claimant by employer.
¶ 56. Furthermore, "when construing an enactment with a series of defining terms, we will apply the rule of ejusdem generis, and the latter general terms will be construed to include only those things similar in character to those specifically defined." Vt. Baptist Convention v. Burlington Zoning Bd., 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (quotation omitted). Thus, we must read "other advantages" in light of the character of board, lodging, and fuel, the defined terms that immediately precede the phrase. See ibr.US_Case_Law.Schema.Case_Body:v1">id. Tuition benefits are nothing like these core, nonfringe items. There is no evidence that the tuition benefit was essential to allow claimant to do her *511 job. Indeed, the graduate tuition benefit offered here permitted an employee to take classes that were completely unrelated to his or her work for employer-as claimant did in this case.
¶ 57. The conclusion that claimant's wages did not include the tuition benefit is also supported by the history of the Act, which was enacted in 1915 as part of a nationwide movement to provide remedies for injured industrial workers. In Lydy, we noted that most of these laws "compensated employees for the core, nonfringe benefits of housing, food, and fuel." 2013 VT 44, ¶ 8, 194 Vt. 165, 76 A.3d 150. Since the Act's passage, the statutory definition of wages has remained virtually unchanged, with the exception of adding the term "bonuses." Id. ¶ 10. Because the health insurance system was in not in place in 1915 and employer-provided health insurance was not a customary benefit at that time, we concluded that such a benefit was not intended to be included in the definition of wages under the Act. Id. ¶ 11.
¶ 58. Like employer-provided health insurance, tuition-free course credits are outside the scope of what the Legislature would have considered to be "wages" in 1915. Tuition benefits are the type of noncore, fringe benefits-like employer-paid life insurance or discounted gym memberships-that became common later in the twentieth century as employers sought to attract workers. See id. ¶ 11 ; Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, 461 U.S. 624, 632, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) (stating that "employer-funded fringe benefits were virtually unknown" when similar federal workers' compensation act was passed in 1927). While these types of fringe benefits are perhaps not as pervasive as employer-provided health insurance, see ante, ¶ 14, they have become increasingly common over the past century. There are any number of things employers may do to attract workers, from serving better food in their cafeteria to providing discounts at health clubs. But access to those fringe benefits does not mean they are remuneration for the work done by the employee. They aren't. In this case, claimant would have received exactly the same pay for the work she did for employer whether she took any courses or not. Despite the prevalence of fringe benefits, the Legislature has not amended the language of the Act to include such additional benefits in the definition of wages, even though it made other amendments to 21 V.S.A. § 601 after our decision in Lydy. See 2013, No. 96 (Adj. Sess.), § 136. This strongly indicates that the value of such benefits were not intended to be factored into determining a worker's average weekly wage. See Dubaniewicz v. Houman, 2006 VT 99, ¶ 13, 180 Vt. 367, 910 A.2d 897 (finding that lack of legislative response to judicial interpretation of statute "at least suggests legislative acquiescence" to Court's interpretation).
¶ 59. The majority claims that Lydy is not controlling because we affirmed the Commissioner's decision in that case, and following Lydy here would require us to reverse the decision below. Ante, ¶ 13. While it is true that we typically defer to the Commissioner's interpretation of the Act, "we will not affirm an unjust interpretation." Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (citing Clodgo v. Rentavision, Inc., 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997) ). In the past, we have not hesitated to reverse workers' compensation decisions that incorrectly interpreted the law. See, e.g., Cyr v. McDermott's, Inc., 2010 VT 19, ¶ 14, 187 Vt. 392, 996 A.2d 709 ; Morin, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 ; Clodgo, 166 Vt. at 551, 701 A.2d at 1046. Lydy controlled this matter and the Commissioner should have followed it, particularly *512 since unlike in Lydy, the question presented by claimant was a matter of first impression for the Commissioner. See Lydy, 2013 VT 44, ¶ 3 n.2, 194 Vt. 165, 76 A.3d 150 (noting twenty-year-old line of decisions in which Commissioner had consistently denied requests to incorporate employer-paid health insurance premiums into wage calculation). In this case there was no previous line of administrative decisions finding that a tuition benefit counted as "other advantages." A decision to the contrary would not upset the settled expectations of employees, employers, and insurers, as it would have in Lydy.
¶ 60. The majority also attempts to distinguish Lydy on the ground that the benefit at issue in this case is "readily ascertainable." Ante, ¶ 16. While the dollar value of the courses actually taken by an employee may be capable of subsequent estimation in a given case, the problem with this approach is that it is unfair to injured workers who are unable to take advantage of the tuition benefit. Consider an employee who is equally situated with claimant in terms of pay and position, but who has family obligations that prevent her from taking graduate level courses from employer. Under the majority's reasoning, if that person is injured, she will receive less in compensation than claimant merely because claimant was able to take the free classes.
¶ 61. Average weekly wages should be based upon the wages received for the work done, not factors that depend on vicissitudes outside of the workplace that allow one worker to utilize fringe benefits while another cannot. The majority's position ignores the fact that the tuition benefit, like health insurance, is offered to every employee regardless of whether the employee takes advantage of it. Each employee can choose to take no courses, some noncredit courses, or a full degree program. Likewise, an employee's spouse or child may use the benefit. The employer offers the courses either way. Just as with health insurance, an employee's interest in the free classes is at best speculative. See Lydy, 2013 VT 44, ¶ 14, 194 Vt. 165, 76 A.3d 150. There may be employees who are prevented from taking courses due to their life circumstances, such as a lack of child care during times when the courses are offered. It is unfair to them that they should receive less in average weekly wage should they become injured than the person whose life circumstances allow them to take the courses.
¶ 62. Furthermore, the statute requires that "other advantages" be capable of being estimated in money in part so that employers and their workers' compensation insurers have a way to anticipate potential liabilities. See 21 V.S.A. § 601(13). The unpredictability of the tuition benefit's value to any particular employee makes it difficult to estimate for workers' compensation insurance purposes. Treating the benefit as part of wages therefore could vastly alter employer's exposure under the Act.
¶ 63. As we noted in Lydy, the workers' compensation law "serves the dual purposes of providing an expeditious remedy for injured employees independent of proof of fault, and of offering employers a liability which is limited and determinate." Lydy, 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150. The majority's decision opens the door to claims for compensation for fringe benefits of all kinds and upsets the "delicate balancing" achieved by the Act. Id. We rightly declined to upset that balance by expanding the definition of "other advantages" to include employer-provided health benefits in Lydy. Instead, we held that such a decision was better left to the Legislature, where the various affected constituencies could debate the matter. Id.
*513 For the same reason, I would decline to expand the definition of an average weekly wage to include the tuition benefits at issue here.
¶ 64. I am authorized to state that Justice Skoglund joins this dissent.

The Internal Revenue Code excludes up to $5250 in employer-provided education assistance from the gross income of an employee. 26 U.S.C. § 127(a)(2) ; see also 32 V.S.A. § 5823 (using federal adjusted gross income as basis for Vermont income tax). Claimant took classes worth a total of $1797 in 2012, $4273 in 2013, and $4515 in 2014; therefore, these amounts were not taxable income to her.