VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      23-AP-080

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2023

| | |
|---|---|
| In re Windham & Windsor Housing Trust Permit Appeal (Laura Campbell\*) | } APPEALED FROM:<br><br>} <br>} Superior Court, Environmental Division<br>} CASE NO. 22-ENV-00033<br>Trial Judge: Thomas G. Walsh |

In the above-entitled cause, the Clerk will enter:

Neighbor appeals from a summary judgment decision that affirmed the approval of a planned residential development (PRD).  She argues that the court erred in concluding that noncontiguous lots can be "developed as a single entity" under 24 V.S.A. § 4303(19).  We affirm.

The record indicates the following.  Windham & Windsor Housing Trust (WWHT) sought approval for a PUD to construct a twenty-five-unit residential development with associated parking and infrastructure in the Town of Putney.  The project is in the Village Zoning District and encompasses six parcels of land that would be consolidated into three lots.  Two of the lots (Lots A1 and A2) are bisected by a Class III town road.  Applicant proposed to build housing and provide parking on Lot A1 and provide additional parking on Lot A2.  An established crosswalk would connect the two parking lots.  There was no development proposed on the third lot.  The Town's Development Review Board approved the project in March 2022 and neighbor appealed to the Environmental Division.

The parties filed cross-motions for summary judgment and the Environmental Division granted summary judgment to WWHT.  We discuss only the issue challenged in this appeal, which is the size of the project lands.  In interpreting the applicable zoning ordinances, the court applied the rules of statutory construction, explaining that its paramount goal was to implement the drafters' intent.  In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262; Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29.  Accordingly, it was required to "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of

the ordinance." Trahan, 2008 VT 90, ¶ 19. If there was no plain meaning, the court would "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995) (quotation omitted). It would "adopt a construction that implement[ed] the ordinance's legislative purpose and, in any event, [would] apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (mem.) (quotation omitted). Finally, because zoning regulations limit common-law property rights, the court explained that it would resolve any uncertainty in favor of the property owner. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 186.

With these principles in mind, the court turned to the applicable regulatory and statutory provisions. PRDs are a subset of planned unit developments (PUDs), and under 24 V.S.A. § 4417(a), municipalities can adopt PUD regulations "to permit flexibility in the application of land development regulations for the purposes of section 4302 of [Chapter 117] and in conformance with the municipal plan." PUDs are defined by statute as:

> one or more lots, tracts, or parcels of land to be developed as a single entity, the plan for which may propose any authorized combination of density or intensity transfers or increases, as well as the mixing of land uses. This plan, as authorized, may deviate from bylaw requirements that are otherwise applicable to the area in which it is located with respect to lot size, bulk, or type of dwelling or building, use, density, intensity, lot coverage, parking, required common open space, or other standards.

Id. § 4303(19).

In a similar vein, the town zoning regulations define a PRD as "[a]n area of land to be developed as a single entity for 2 or more dwelling units which do not correspond in lot size, dimensional requirements or type of dwelling to the regulations of the district in which it is located." Zoning Regulations, Article II. As with the statute above, the regulations indicate that the purpose of PRDs is to encourage flexibility in land use planning. See Zoning Regulations § 400.1 (stating that purposes of PRDs are "to encourage maximum flexibility of design and development of land in such a manner as to promote the most appropriate use of land; . . . PRDs may provide for greater opportunities for varied and affordable housing; . . . [PRDs] are designed to allow for multiple-use and/or multiple-structure projects which may not conform to the zoning district in which they are found, but which offer a creative alternative that would be desirable to the Town in a manner consistent with the Putney Town Plan.").

Neighbor argued that because Lots A1 and A2 were not contiguous, they could not be considered one "lot" that could host the project. The court found this interpretation unsupported by the law. It distinguished Route 4 Associates v. Town of Sherburne Planning Commission, 154 Vt. 461, 461 (1990), cited by neighbor in support of her position. The court explained that that case turned on the particular language of the zoning regulations at issue, which required that project land be "contiguous." This Court upheld the denial of the permit in Route 4 Associates given that the lots in question did not touch one another as required by the town. Id. There was no such requirement in the instant case.

2

The court explained that PRDs were specifically authorized to be on more than one lot and neither the zoning regulations nor the law authorizing and defining PRDs required that a PRD's project lands be contiguous. See 24 V.S.A. § 4303(19); see also Zoning Regulations, Article II (defining PRDs as being "[a]n area of land"). The court declined to read such a requirement into the law, explaining that, to the extent there was any ambiguity, it must be resolved in WWHT's favor. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. The court further found the legislative intent of both § 4303(19) and the zoning regulations clear on their face: PRDs were intended to provide flexibility in land-use permitting to allow for development in accordance with the applicable town plan. Reading in more stringent language would contravene this intent. The court thus concluded that the project lots need not be contiguous, and the fact that a road bisected two of the lots was not fatal. It granted summary judgment to WWHT on this and related issues, and ultimately entered a judgment order in WWHT's favor. This appeal followed.

Neighbor essentially reiterates the same arguments on appeal. She argues that the court erred in concluding that the PRD could be developed as a single entity given that the lots are not contiguous. She asserts that there is not one lot that can host the project as a single entity. Neighbor again cites the case distinguished by the trial court and contends that the PRD must be located on one single "lot."

"We review motions for summary judgment de novo, applying the same standard of review as the trial court. If there is no genuine issue of material fact, summary judgment will be granted where the moving party is entitled to judgment as a matter of law." In re All Metals Recycling, Inc., 2014 VT 101, ¶ 6, 197 Vt. 481 (citation omitted); see also V.R.C.P. 56(a). WWHT was entitled to summary judgment here.

Applying well-established principles of statutory construction, we agree that the plain language of the zoning regulations and the relevant law do not require that the lots be contiguous or that the project be on a single "lot." As set forth above, the zoning regulations define a PRD as "[a]n area of land to be developed as a single entity for 2 or more dwelling units which do not correspond in lot size, dimensional requirements or type of dwelling to the regulations of the district in which it is located." Zoning Regulations, Article II. Section 4303(19) contains similar language and plainly contemplates projects that are composed of "one or more lots." Neither provision contains a contiguity requirement. The project here falls within the plain language of these definitions. This conclusion is consistent with the legislative intent of both provisions. Nothing in Route 4 Associates supports a contrary conclusion. We agree that that case is distinguishable on the basis identified by the trial court: the applicable definition contained a requirement that is not present here. Neighbor also raises an argument about WWHT's ability to transfer development rights, but she fails to show that she raised this argument below. We therefore do not address it. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); In re S.B.L., 150 Vt. 294, 297 (1988) (appellant bears burden of demonstrating how trial court erred warranting reversal, and Supreme Court will not comb record searching for error); see also V.R.A.P. 28(a)(4) (appellant's brief should explain what issues are, how they were preserved, and what appellant's contentions are on appeal, with citations to authorities, statutes, and parts of

record relied upon). Even if this argument was preserved, we would reach the same conclusion based on the plain language of the law. Summary judgment was properly granted to WWHT.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice