VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

Docket No. 24-ENV-00049



| Town of Berlin v. Harr, LLC d/b/a Berlin Mobile Home Park |
| --- |

## ENTRY REGARDING MOTION

Motion:           Motion for Preliminary Injunction

Filer:            Stephen L. Cusick, attorney for the Town of Berlin

Filed Date:    June 11, 2024

No response filed.

**The motion is GRANTED.**

This is an enforcement action initiated by the Town of Berlin (Town) against Harr, LLC d/b/a Berlin Mobile Home Park (Respondent) regarding the reconstruction of a mobile home park (the Park) at 135 Partridge Farm Road, Berlin, Vermont (the Property).  Presently, the Town asks this Court to issue a preliminary injunction barring Respondent from pouring concrete slabs and placing any new structures on the Property and conducting any construction or renovation work on existing structures at the Property.  Specifically, the Town's motion seeks to prohibit Respondent from constructing any new single- or two-family dwellings, new manufactured homes, new concrete slabs or pads, new accessory structures, new water and sewer systems, and new storage tanks on the Property.[1]

The Town initially moved for an emergency ex-parte temporary restraining order.  The Court declined to issue emergenccy relief and required service of a notice for a June 21, 2024 hearing upon Respondent.  The hearing occurred on June 21, 2024.  Respondent retained Stephen J. Craddock, Esq. shortly before the hearing, but counsel was unable to attend.

---

[1] During the July 11 motion hearing, the Town argued that the Court should also enjoin any repairs and maintenance to the existing structures which remain on the Property.  These activities were not expressly addressed within the Town's Verified Complaint.

Randy Rouleau, representative of Respondent, attended the hearing June 21 on Respondent's behalf. Stephen L. Cusick, Esq. and Thomas Badowski, Town Zoning Administrator, appeared on behalf of the Town. At the conclusion of the June 21 hearing, the Court issued an Entry Order requiring Respondent to maintain the status quo and not commence any new development on the Property until the Town's motion could be heard as a motion for a preliminary injunction. The Court did allow activities limited repairs of water damage to existing homes on the Property. Town of Berlin v. Harr, LLC, No. 24-ENV-00049, slip op at 3 (Vt. Super. Ct. Envtl. Div. June 21, 2024).

After affording Respondent and counsel time to prepare, the Court held an additional hearing on the Town's request for a preliminary injunction on July 11, 2024. The Town, again represented by Attorney Cusick, appeared in person at the Costello Courthouse in Burlington and Respondent and Attorney Craddock appeared remotely via the WebEx platform.

This Court has authority in a zoning enforcement action to enjoin a property owner from using their property in a manner that violates the applicable zoning provisions. Town of Brighton v. Griffin, 148 Vt. 264, 267 (1987); 24 V.S.A. § 4452; V.R.C.P. 65. An injunction "is generally regarded as an extraordinary remedy and [should] not be granted routinely unless the right to relief is clear." Comm. To Save the Bishop's House v. Med. Ctr. Hosp. of Vermont, Inc., 136 Vt. 213, 218 (1978) (citation omitted). The main factors to consider in whether to grant a preliminary injunction are: (1) the threat of irreparable harm; (2) potential harm to the non-moving party; (3) the likelihood of success on the merits; and (4) the public interest. Taylor v. Town of Cabot, 2017 VT 92, ¶ 19, 205 Vt. 586. This matter is an enforcement action wherein the Town is alleging that Respondent is undertaking activities without necessary Town approvals. This Court has no discretion to allow a property owner to undertake unpermitted activities. Thus, while the four factors bear relevance to the pending motion, our focus in this proceeding is to determine whether Respondent is conducting activities at the Property without necessary Town approval pursuant to the Berlin Land Use Development Regulations (BLUDR). If so, such activities would constitute a zoning violation that this Court has no discretion to allow to continue. The Court addresses this threshold issue, within the

likelihood of success factor, in detail and then summarily reviews the remaining three factors of the preliminary injunction analysis.

At this preliminary stage of this matter, we conclude that the Town is likely to succeed on the merits of this case in proving that Respondent is carrying out activities at the Property without necessary Town approvals. It is undisputed that the Property is located entirely within the Regulatory Floodway of the Special Flood Hazard Area. Because of this, it is subject to Section 2202 of the BLUDR. Prior to addressing the specific application of those provisions to the Property and Park, the Court addresses two arguments made by Respondent challenging the applicability of the BLUDR to the Park.

Respondent argues that the Park is a "grandfathered" use, more commonly known as a pre-existing nonconformity, and is therefore exempt from the Town's permitting requirements.[2] In support of his argument, Respondent points to a guidance document provided by the Vermont Department of Housing and Community Development, which in turn cites to 24 V.S.A. § 4412(7)(B). This provision addresses nonconforming mobile home parks as well as the general authority of a municipality to regulate zoning nonconformities. Section 4412(7)(B) states that:

> If a mobile home park, as defined in 10 V.S.A. chapter 153, is a nonconformity pursuant to a municipality's bylaws, the entire mobile home park shall be treated as a nonconformity under those bylaws, and individual lots within the mobile home park shall in no event be considered nonconformities. Unless the bylaws provide specific standards as described in subdivision (1)(B) of this section, where a mobile home park is a nonconformity under bylaws, its status regarding conformance or nonconformance shall apply to the parcel as a whole, and not to any individual mobile home lot within the park. An individual mobile home lot that is vacated shall not be considered a discontinuance or abandonment of a nonconformity.

Nowhere in this statutory provision does it expressly state that a nonconforming mobile home park is exempt from local zoning as proffered by Respondent. The Court will not read such a broad exemption into § 4412(7)(B). Rather, this provision explains that

---

[2] It is not disputed that prior to the July 2023 flood, the Park was a pre-existing nonconformity. Whether the Park or any individual lot thereon, however, has retained that status is disputed by the Town.

individual lots within a mobile home park do not affect a park's nonconforming status and, generally, mobile home parks that are zoning nonconformities may be viewed as a nonconformity on the whole. In fact, this provision clearly contemplates that nonconforming mobile home parks are still subject to a town's bylaws. This is evidenced by § 4412(7) which lays out the scope in which a municipality may regulate nonconformities through zoning. Accordingly, § 4412(7)(B) does not present grounds to relieve Respondent of compliance with the applicable BLUDR provisions.

Respondent also argues that the BLUDR flood regulations discriminate against mobile homes compared to stick-built homes, in violation of 24 V.S.A. § 4412(1)(B). Section § 4412(1)(B) states, in relevant part, that "no bylaw shall have the effect of excluding mobile homes . . . from the municipality, except upon the same terms and conditions as conventional housing is excluded." 24 V.S.A. § 4412(1)(B). The BLUDR flood regulations do not prohibit mobile home parks within the Town. Rather, the BLUDR prohibit any development within the Special Flood Hazard Area without necessary Town approvals. There is no provision within the BLUDR expressing that mobile home parks are actually or effectively prohibited within the Town. Accordingly, § 4412(1)(B) does not present grounds to relieve Respondent of compliance with the applicable BLUDR provisions.

Having addressed Respondent's arguments that the BLUDR are inapplicable to the Property and Park, we turn to the likelihood of success on the merits under the BLUDR.

The BLUDR requires Town review and approval for all development within the Special Flood Hazard Area. BLUDR § 2202.F. The BLUDR defines "development" as "any human-made change to improved or unimproved real estate, including but not limited to buildings or other structures, mining, dredging, filling, grading, paving, excavation or drilling operations, or storage of equipment for materials." BLUDR § 2202.L(7) ("Development"). Based on this definition, the pouring of concrete and the installation of new homes or accessory structures would constitute development and therefore requires Town review and approval.

Further, the BLUDR specifically requires Town review and approval to repair, reconstruct, or replace a damaged or destroyed nonconforming structure. BLUDR § 1207.D.

In addition, BLUDR § 2202.G requires Town Zoning Administrator review and approval for non-substantial improvements to pre-existing structures. A pre-existing structure located within the floodway may only be replaced after receiving Town conditional use approval, and reconstruction of a substantially damaged pre-existing structure located in the floodway is prohibited. BLUDR § 2202.I. Lastly, construction of new single- and two-family homes in the floodway is also prohibited. BLUDR § 2202.G.

The parties dispute whether the replacement of homes removed from the Property after the July 2023 flood constitutes replacing a pre-existing nonconforming structure in the floodway or the construction of a new home. Functionally, the Town argues that the Property and/or Park lost its pre-existing nonconforming status immediately upon removal of the damaged structures from the Property after the flood.

Pursuant to 24 V.S.A. § 4412(7), "a municipality, in its bylaws, may . . .[s]pecify a time period that shall constitute abandonment or discontinuance of that nonconforming use, provided the time period is not less than six months."

In interpreting zoning ordinances, we apply the rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578; see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.

There are no provisions in the BLUDR addressing what constitutes abandonment or discontinuance of a pre-existing nonconformity within the floodway or abandonment or discontinuance of a residential pre-existing nonconformity, generally. The Town has not elected to specify when a residential nonconformity, generally or within the floodway, is

abandoned or discontinued. Absent a provision of the BLUDR that addresses when a nonconforming residential structure is abandoned or discontinued, generally or within the floodway, the Court will not impose the harsh result proffered by the Town and interpret the BLUDR in a way that would destroy the Property and/or Park's pre-existing nonconforming status upon removal of the structures after the July 2023 flood. Thus, while we ultimately conclude for the reasons set forth below that the Town is likely to succeed on the merits of their claim against Respondent, we conclude that the Town is unlikely to succeed on the merits of its assertion that removal of homes following the flood eliminated the Property and/or Park's pre-existing nonconforming status such that re-installation of the removed homes would constitute the construction of a new single family home in the floodway.

At a minimum, the at-issue activities require Town review and approval, either by the Zoning Administrator or the Development Review Board, prior to commencement. At a maximum, these activities are prohibited under the BLUDR.

Further, the parties dispute whether repair work on two cabins and on the four homes remaining on the Property constitutes non-substantial improvements, which would require approval of the Zoning Administrator, or reconstruction of a structure that has been "substantially damaged," which would be prohibited in the floodway. At a minimum the BLUDR clearly requires Town review and approval to make any repairs or maintenance to existing structures in the floodway.

The Court need not determine at this time whether the subject activities require Town review and approval or are fully prohibited under the BLUDR. This is because, at a minimum, Town review and approval is required prior to commencement of each activity. It is undisputed that Respondent has not applied for or received Town approval for any work at the Property. Thus, all the work constitutes a zoning violation that this Court cannot allow to occur. The Court concludes, therefore, that the Town is likely to succeed on its claims that any development on the Property, including repairs, without Town review and approval is a zoning violation.

Next, the Town argues that any further development at the Property, without Town review and approval, would create a threat of immediate and irreparable harm to life and

property because the Property is located within the floodway.  The Town also suggests that its eligibility to obtain flood insurance and emergency flood assistance could be in jeopardy if it does not enforce the flood-related provisions of the BLUDR.  While these concerns may well be warranted, generally, the Court concludes that these particular harms are not immediate and irreparable in the context of this enforcement action.  It is undisputed that no one currently lives on the Property, and that none of the existing structures are habitable. Furthermore, the Town has initiated this action to enforce its bylaws, and therefore the risk of losing emergency assistance funding for its failure to enforce the BLUDR is limited.  Thus, we conclude that this factor does not weigh in favor of issuing an injunction at this stage of the proceeding.

With respect to any potential harm to the non-moving party, Respondent offers that while the Park is not operational, it is losing $20,000.00 per month in rents.  While this financial harm is significant, it does not present grounds for this Court to allow a potential zoning violation to continue without requisite Town review and approval.  This factor weighs in favor of issuing a preliminary injunction.

As to the public interest, the Town argues there is a compelling interest in ensuring that the BLUDR are enforced, that no unregulated development occur in the floodway, and that residents retain their eligibility to obtain flood insurance and other relief.  These are all compelling public interests weighing in favor of an injunction, particularly in the context of activities occurring absent Town review and approval.

Lastly, under Vermont Rule of Civil Procedure 65(c), the Court shall not issue an injunction unless the moving party provides a security in an amount set by the Court.  The security can be waived for good cause.  Here, the Town is carrying out its statutory enforcement obligations which we consider as good cause to waive the security requirement.

For the foregoing reasons, we hereby **GRANT** the Town of Berlin's request for a preliminary injunction.

Respondent is prohibited from undertaking any further construction activities or development at the Berlin Mobile Home Park without prior Town review and approval. This includes, but is not limited to:

1. Repairs, maintenance, and improvements to the existing cabins and homes,
2. Preparation and pouring of concrete for new manufactured homes, and
3. Placement of new manufactured homes at the Property.

This injunction supersedes the Court's June 21 Order and shall remain in effect until further order of this Court.

The Court will schedule this matter for a status conference. Parties shall be prepared to discuss any necessary pre-trial work in preparation for a final hearing.

Electronically signed this 12th day of July 2024 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division