VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00022



| Ampersand Properties, LLC PRD DRB Final Review Application | MERITS DECISION |

In this on-the-record matter, Ampersand Properties, LLC (Applicant) appeals a March 4, 2025 decision of the Town of Stowe (Town) Development Review Board (DRB) denying its request for a planned residential development (PRD) containing 22 units and associated infrastructure (the Project) at property located on Mountain Road, Stowe, Vermont (the Property).

In this matter, Applicant is represented by Elizabeth Conolly, Esq. The Town is represented by David W. Rugh, Esq. and Beriah C. Smith, Esq. David Wolfgang has also entered an appearance as an interested party and is self-represented in this matter. Mr. Wolfgang did not participate in the briefing on the merits.

## Legal Standard

This is an on-the-record appeal. Thus, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). On appeal, we do not take new evidence or make our own factual determinations. The Court instead reviews the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)-(b).

The Court will only affirm factual findings if they are supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 586. The Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Off. Of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. Instead, the Court simply looks to whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the factual findings." Id. (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). In an on-the-record appeal such as this, the Court reviews legal determinations de novo. In re P&R Assoc., LLC, No. 74-6-12 Vtec, slip op. at 3–4 (Vt. Super. Ct. Envtl.

Div. Feb. 1, 2013) (Walsh, J.). Our review is additionally limited to those issues raised in Applicant's (here, the appellant's) Statement of Questions. See V.R.E.C.P. 5(f).

**Statement of Questions**

Applicant poses two Questions in its Statement of Questions. They ask:

> 1. Did the [DRB] err in their determination that the Project fails to comply with § 8.4(2) of the Town of Stowe Zoning Regulations?
>
> 2. Did the DRB err in their determination that the Project fails to comply with § 5.1(f) of the Town of Stowe Subdivision Regulations?

Statement of Questions (filed Apr. 21, 2025).

**Factual Background**

The Property contains ±5.3 acres and is located in the Mountain Road Village (MRV). Applicant applied for a planned residential development (PRD) on the Property to consist of 6 residential buildings containing a total of 22 units. The Project consists of four duplexes and two multifamily buildings containing seven units each. The application is subject to the Town of Stowe Zoning Regulations, effective January 31, 2024 (the Zoning Regulations) and the Town of Stowe Subdivision Regulations, effective July 16, 2012 (the Subdivision Regulations). The DRB heard the application and denied the Project based on its conclusion that the Project does not comply with Zoning Regulations § 8.4(2), related to the provision of a village green at the Property, and Subdivision Regulations § 5.1(4), related to settlement patterns.

Applicants propose a total of ±2.055 acres of village green across three areas on the Property. First, there is a ±0.996-acre portion fronting the West Branch of the Little River. It is not defined by building facades or street edges. Second, there is a ±0.453-acre portion fronting portions of VT-108/Mountain Road. The Stowe Recreation Path runs through this area and a proposed pedestrian connection would link that path to the central village green area. This portion of the proposed village green is not defined by building facades and street edges. Third, there is a ±0.606-acre rectangular village green proposed in the interior of the PRD's buildings and generally defined by the edge of the proposed internal private roadway. The internal village green will also accommodate stormwater management areas with gravel wetlands.

Beyond the above, the DRB did not make findings regarding the settlement patterns for the Project. Most notably, the DRB made no findings regarding the street network proposed for access to the Project or its orientation towards the streetscape.

## Discussion

### I.      Zoning Regulations § 8.4(2)

In the MRV, development must meet some standards in the Meadowland Overlay District. Relevant here:

> [D]evelopment on designated meadowland shall be permitted in a manner which establishes a village green, said green to be formally defined by building facades, street edges or other appropriate defining elements. The defined green shall be of a size and shape that is consistent with traditional New England village greens; shall be oriented toward, and front upon, adjacent streams and public roads and highways; and shall be designed and managed to function as a public space. In no case shall the size of the defined green be less than thirty (30%) of the total size of the designated meadowland, or less than 1.5 acres, whichever is greater.

Zoning Regulations § 8.4(2).

First, Applicant challenges the DRB's conclusion that the proposed village green did not meet the dimensional requirement because, although each individual section alone does not meet the area requirement, the entire proposed area does when viewed as a whole.

When interpreting a zoning ordinance, the Court's goal is to effectuate the intent of the drafters, first by looking to the plain meaning of the regulation at issue and the "whole of the ordinance." In re Tyler Self-Storage, 2011 VT 66, ¶ 13 (quotation omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge MotoCross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotation omitted); see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. With these provisions of interpretation in mind, we turn to the applicable regulatory and statutory provisions.

Applicant proposes a total of ±2.055 acres of "village green" across interconnected areas on the Property. The Zoning Regulations require no less than 30% of the total size of the designated

meadowlands or less than 1.5 acres, whichever is greater. At a minimum, Zoning Regulations § 8.1(4) is ambiguous and its terms must be resolved in Applicant's favor. The proposed village green area's "total size" meets the dimensional requirements. There is no aspect of § 8.1(4)(2) that specifically states that a village green must be one area meeting all of the requirements set forth therein, only that the total area does. The village green need not be confined to one area to comply with the dimensional requirements of Zoning Regulations § 8.1(4).

Next, Applicant challenges the conclusion that the village green does not meet design standards with regard to designation as it relates to building facades, street edges or other appropriate defining elements or general orientation and management of a public area. Functionally, Applicant argues that there was sufficient evidence in the record to reach an alternative finding and conclusion on these issues. Although framed as an argument as it relates to the DRB's legal conclusions, this assertion essentially asks the Court to reweigh the record evidence, reach factual findings different from the DRB, and correspondingly alter its legal conclusions as to the Project's compliance with the Zoning Regulations § 8.1(4). While Applicant may feel that sufficient evidence was presented in the record with respect to design and management of the village green as a public space, the argument requests the Court reweigh the evidence presented below, which we will not do. See Devers-Scott, 2007 VT 4, ¶ 6. That the DRB did not give weight to Applicant's evidence does not present grounds to overturn the decision in an on-the-record appeal.[1] In fact, clear evidence exists in the record showing that the DRB did not believe that the evidence regarding the management of the village green as a public space in the context of § 8.1(4) was sufficient to reach a conclusion that the space would meet this requirement of the Zoning Regulations. Instead, it is clear that the DRB was concerned that this area was not to be "public" but instead generic open space.

Thus, while the Court disagrees with the DRB's conclusion with respect to the dimensions of the village green, the Court finds that there is substantial evidence in the record to support the factual findings with respect to the Project's compliance with applicable design standards and the Court will not reweigh the record evidence. To the extent that Applicant makes a challenge to the DRB's legal conclusions with respect to the design standards, those conclusions are affirmed. Question 1 must therefore be answered in the negative: the DRB did not err in concluding that the application did not comply with Zoning Regulations § 8.1(4).

_____

[1] The same conclusion holds true for Applicant's arguments regarding the village green's relationship to building facades and frontage on Little River and/or Mountain Road.

4

## II.    Subdivision Regulations § 5.1(4)

The merits of Question 2 are largely mooted by the adjudication of Question 1, upholding the DRB's findings and conclusions regarding the definition of the village green area. Relevant to this application, Subdivision Regulations § 5.1(4)(a) requires that subdivisions "shall be designed to reflect traditional village settlement patterns characterized by an appropriate scale of development, an interconnected street network with development oriented to the streetscape, a mix of land uses and pedestrian access."

The Court notes that the DRB made no factual findings regarding whether the Project would include interconnected street networks despite there appearing to be some level of evidence on that issue presented. Nor do there appear to be factual findings regarding how the development proposed to be oriented to the streetscape. Thus, but for the Court's above conclusion regarding Question 1, the Court would likely have needed to remand this matter back to the DRB for additional factual findings.

Finally, despite the above, Applicant challenges the DRB's legal conclusion that the Project does not contain a mix of land uses because it is generally residential in nature. While the Court need not issue a final ruling on the merits of this argument because of the adjudication of Question 1, it notes that Applicant's legal theory may have merit. Multi-family dwelling units and two-family (duplex) dwelling units are listed as different land uses in the Zoning Regulations Table of Uses. See Zoning Regulations Table 6.1. While they are both included under the general "residential" umbrella, they are clearly defined as different land uses by this table. Id. In fact, two-family and multi-family residential uses are subject to different standards because duplexes are permitted uses in all districts whereas multi-family residential uses are conditional uses in all districts. Id. Further, the uses have different density standards. See Zoning Regulations Table 6.3.[2]

The Court need not reach a final conclusion on this issue, however, in light of the Court's conclusion with respect to Question 1. Instead, Question 2 is **MOOT**.

### Conclusion

For the following reasons, the Court **AFFIRMS** the DRB's denial of the permit. In so doing, the Court disagrees with the DRB's interpretation of the dimensional requirements of a village green

---

[2]    The Town disagrees with this position and cites the Zoning Regulations definition of "mixed-use development." The Court need not completely reconcile this argument at this time. It simply points out that Applicant's argument is not baseless when considering the general principles of interpretation. This includes, but is not limited to, recognition to Zoning Regulations § 4.21, including subsection (4) thereof which specifically addresses PRDs within the context of mixed uses.

as defined by Zoning Regulations § 8.1(4) but finds credible evidence to support their factual findings with respect to the proposed village green's noncompliance with other design standards. Because the denial below may be upheld on these grounds, Question 2 is **MOOT**, though the Court specifically notes concerns with the factual findings and, potentially, legal conclusions reached with respect to the Project's compliance with Subdivision Regulations § 5.1(4).

This concludes the matter before the Court. A Judgment Order accompanies this Decision. Electronically signed February 2, 2026 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division